[No. 24924. Department One. April 2, 1934.]

FANNY G. TROYER, *Respondent*, v. MERVYN B. TROYER, *Appellant.*[1]

[1]Reported in 30 P. (2d) 963.

*Henry Clay Agnew,* for appellant.

*Caldwell & Lycette* and *Dean H. Eastman,* for respondent.

MILLARD, J.—An action was brought by Fanny G. Troyer against her husband, Mervyn B. Troyer, for divorce. On March 21, 1930, in consonance with its findings that the complainant was entitled to an absolute divorce, entitled to the custody of the two minor children of the parties, and

"That the plaintiff and defendant own certain property as set forth in the pleadings herein; that on the 19th day of March, 1930, the plaintiff and the defendant entered into a stipulation in the above entitled cause, pursuant to which they agreed upon a division of the property and payment of certain alimony, other moneys and attorney's fees, subject to the approval of the court; that the said stipulation is just and equitable, and the agreements therein contained constitute a just and reasonable award to the plaintiff as and in lieu of all alimony and property rights of whatsoever kind or nature,"

the trial court entered an interlocutory order, the pertinent portion of which reads as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Stipulation heretofore entered into between the plaintiff and defendant on the 19th day of March, 1930, and having been duly filed herein, and being attached to and made a part of this interlocutory order of divorce, be and the same is hereby approved in all respects, as a just and equitable division and disposition of the property of the plaintiff and defendant and as a just and reasonable award of alimony to the plaintiff for herself and the said minor children, and in settlement of the property rights of the said plaintiff and defendant; and the said defendant is hereby ordered and directed to do and perform any and all of the things necessary to forthwith carry out the terms of said agreement, including the continuing acts and pay-

ments to be made and performed by him, as in said stipulation provided, and that the details of such stipulation, and such others as to the Court may seem just and proper, shall be set forth and embodied in a decree hereafter to be entered herein, and decreed therein to be forever binding upon the plaintiff and the defendant.''

The stipulation entered into between the plaintiff and defendant March 19, 1930, two days prior to the entry of the interlocutory order of divorce and made a part of the interlocutory order, reads as follows:

''Whereas, the plaintiff and the defendant have been endeavoring to reach a settlement of the above entitled action, and have, with the consent and approval of their respective attorneys, agreed upon the following:

''(1) The plaintiff will request the Court to consider her complaint as one for divorce, and the plaintiff will be awarded a decree of divorce, provided the Court is satisfied that she is entitled to it.

''(2) In the decree to be submitted to and signed by the Court, if satisfactory to the Court, the plaintiff will be awarded the following property:

''(a) One-half of all the capital stock of the Continental Can Company, which, at the beginning of this action, stood in the name of the defendant, Mervyn B. Troyer, to-wit: 677 shares of the common capital stock of said Continental Can Company shall be awarded and delivered to the plaintiff, together with the sum of sixteen hundred fifty dollars in cash, being one-half of the money deducted from the salary of the defendant to date, and paid as installments upon additional stock being purchased by the defendant.

''(b) The home now occupied by the plaintiff at 1606 Seventh avenue west, described as the west 80 feet of lot 10 and the north one-half of the west 80 feet of lot 11, block 32, Law's Second Addition to the city of Seattle, King county, Washington, together with the furniture and furnishings situated therein; the home shall be awarded to the plaintiff free and clear of all encumbrance.

"(c) Two certain bonds of the par value of $1,000 each, now in the possession of the plaintiff.

"(d) That certain Studebaker automobile now in the possession of the plaintiff.

"(e) The sum of fifteen hundred ($1500) dollars in cash for the payment of outstanding bills heretofore incurred by plaintiff.

"(f) The decree shall also provide for the payment to the plaintiff by the defendant of the sum of three hundred ($300) dollars per month, and the additional sum of one hundred fifty ($150) dollars quarterly, beginning May 1st, 1930, for the maintenance, support and education of the two minor children, and for the maintenance of the plaintiff; provided, however, that should the plaintiff re-marry, said monthly payments shall be reduced to two hundred ($200) dollars per month as long as both of said children are living and under the age of twenty-one years, and shall be reduced by one hundred ($100) dollars upon the death of either child or upon either child attaining the age of twenty-one years. Such monthly payments shall be secured as hereinafter provided.

"(g) The defendant shall pay all the costs of this action, including the court reporter and witness fees and attorney fees of $3,000, in addition to that heretofore paid.

"(3) The decree shall provide that the defendant shall have all the rest and residue of the property belonging to the community composed of the plaintiff and defendant, and belonging to the defendant, to-wit:

"(a) One certain Reo automobile now in the defendant's possession;

"(b) One-half of the capital stock of the Continental Can Company, to-wit: 677 shares of said capital stock; bonds in the sum of $5,000 described in the defendant's amended answer and cross-complaint, and now in the possession of the First Seattle Dexter Horton National Bank;

"(c) All existing life insurance policies upon the life of the defendant;

"(d) All interest in the 150 shares of the Continental Can Company common stock now being pur-

chased by the defendant upon monthly installments of $150 per month (one-half of the amount paid in on said stock having been awarded to the plaintiff in cash in sub-paragraph (a) of paragraph 2 hereof).

"(4) The decree shall provide that the defendant shall deliver forthwith to the First Seattle Dexter Horton National Bank, a corporation, or its successor, certificates of common capital stock of the Continental Can Company, a corporation, or its successor, of the present market value of $15,000, which said certificates shall be endorsed to the First Seattle Dexter Horton National Bank as trustee, with full power to secure transfer of such stock to itself as trustee, upon the books of the said Continental Can Company, a corporation, or its successor, with power and authority to act in accordance with the provisions of a trust agreement separately entered into by the plaintiff and defendant with the said trustee, which said trust agreement shall be substantially as follows:

"(a) In the event that the defendant defaults any month for a period of seven days in the payment of the $300 to be paid as hereinbefore provided, and upon the receipt by the trustee of an affidavit to that effect, it shall have authority and it shall be its duty to advance to the plaintiff the amount so in default and reimburse itself from sale of the stock as herein provided, or it may forthwith sell sufficient of said stock upon the New York Stock Exchange at the current market price for an amount sufficient to cover the payments necessarily made, or to be made hereunder to the plaintiff by the said trustee. Like procedure may be had, and the necessary steps shall be taken in the same manner in the event that the defendant fails to pay to the plaintiff on May 1st, 1930, and/or quarterly thereafter, the sum of $150 for the support and education of the minor children of the plaintiff and defendant.

"(b) In order that the trustee may be advised of the payment or non-payment of these amounts when due, the monthly payments of $300 and the quarterly payments of $150 shall be paid through the said trustee bank or its successor by the defendant.

"(c) Any payments to the plaintiff out of the prin-

cipal of $15,000 of said trust fund, shall not relieve the defendant from his obligation to make such monthly and quarterly payments, respectively. And in the event that it becomes necessary for the plaintiff to receive any such payments from the principal of said trust fund of $15,000, the defendant shall nevertheless remain obligated to make such payments so defaulted, which said payments shall be made to the said trustee and shall go into said trust fund to reimburse said fund for any payments made therefrom as aforesaid; and the making of these payments, both monthly and quarterly, may be enforced to the same effect as if the said plaintiff had not received the defaulted payments from the principal of such trust fund.

"(d) In the event of the death of the defendant prior to the death of the plaintiff and prior to the two children, Hope and Suzanne, respectively attaining the age of twenty-one years, then and in that event the trustee shall pay to the plaintiff, or to any guardian appointed for said children, any amounts required for the maintenance, support and education of said children, or the survivor of them, not exceeding the sum of $200 per month until such fund is exhausted or said children shall attain legal age.

"(e) In the event that all payments are made as required in sub-paragraph (f) of paragraph 2 hereof, then and in that event the trustee shall transfer and deliver all of the stock or proceeds then remaining in its hands to the said children, Hope Troyer and Suzanne Troyer, share and share alike, or to the survivor of them; each child's share of such principal to be paid to said children when they shall respectively attain legal age, regardless of whether the defendant is at said time making said payments as provided herein.

"(f) The defendant shall have the right to require the trustee to sell the stock so deposited with it, provided, however, that the said stock shall not be sold at a price that would reduce the principal amount of said trust to less than $15,000, nor shall the trustee be authorized to sell any portion of said stock or securities at the request of the defendant at a price which, if the entire stock were sold, would be less than $15,000 un-

less the defendant shall deliver to the trustee an amount sufficient to make up such deficit, or in other words, to keep such trust fund at the principal sum of $15,000. Provided further, however, that should any stock dividends be declared upon such stock while held by the said trustee, the same shall be issued to the defendant, or his assigns, or if not so issued to him, then the trustee will, upon demand, transfer by endorsement any such stock dividends to the said defendant or his assigns. It is further agreed that all dividends on said stock held by said trustee shall be payable to the defendant either by written order upon the Continental Can Company, or if this be not agreeable to said company, then the same shall be paid over to the defendant by the said trustee so long as the trustee receives the same and so long as the said defendant is not in default in any of the monthly or quarterly payments hereinbefore provided for.

"(g) *Such trust agreement shall not be revocable except by written agreement of the plaintiff and defendant,* and should said stock be converted into cash by the said trustee, it shall have the usual unlimited powers to invest and/or reinvest, without liability on its part for any mistake in judgment.

"(h) The trustee's fees or commission for acting shall be deductible from the dividends upon such stock deposited with it, or paid direct by the defendant at his option.

"(5) The decree shall also provide that the care, custody and control of the two minor children, Hope and Suzanne, shall be awarded to the plaintiff with the right to the defendant to have said children visit at the home of the defendant's parents during the daytime at reasonable times, provided, however, this privilege shall be withdrawn from the defendant if one Naomi Mister is at the said parents' home at any time while said children are there; and further provided that nothing herein contained shall prohibit the plaintiff from taking said children out of the jurisdiction of the court on trips or for vacations or when the interests of their health require it."

After the entry of the interlocutory order approving the stipulation, a trust agreement, as provided for in the stipulation, was entered into by the parties, and the trust created thereby was accepted by the trustee. The trust agreement reads as follows:

"THIS INDENTURE made this 21st day of March, 1930, between MERVYN B. TROYER of Seattle, Washington, hereinafter called first party, FANNY G. TROYER, hereinafter called second party, and FIRST SEATTLE DEXTER HORTON NATIONAL BANK, a corporation, with its principal place of business in Seattle, Washington, hereinafter called Trustee, WITNESSETH:

"Whereas, the first and second parties have heretofore entered into a stipulation in cause No. 214925 in the Superior Court of the State of Washington for King County, a copy of which stipulation is hereto annexed, marked Exhibit 'A' and made a part hereof, and by the terms thereof it is contemplated and provided that a trust will be created with the First Seattle Dexter Horton National Bank as Trustee, and said stipulation was, by an interlocutory order of divorce in the above entitled action, approved and confirmed by the Superior Court of King County on the 21st day of March, 1930; and

"Whereas, the trustee is willing to accept said trust subject to the terms hereof;

"Now, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, the first party herewith delivers to the trustee, or its successor, 219 shares of the common capital stock of the Continental Can Company, a corporation, said stock being of the market value of $15,001.50 at the close of market on March 21st, 1930; and the trustee is hereby given full power to secure a transfer of such stock to itself as trustee, or its nominee, upon the books of the said Continental Can Company, a corporation, or its successor; the said capital stock, or the proceeds thereof, to be held by said trustee subject to the terms of this trust, to-wit:

"(1) In the event that the first party fails, refuses or neglects, for a period of seven days after the first

day of each and every calendar month beginning April 1st, 1930, to pay the sum of $300 to the second party through the said trustee, and/or the diminished sum as hereinafter provided, then the trustee shall have authority, and it is hereby instructed to advance to the second party the amount so in default, and to reimburse itself from the sale of sufficient of the aforesaid stock in even shares upon the New York Stock Exchange at the current market price, or it may forthwith sell sufficient of said stock in even shares as aforesaid for an amount sufficient to cover the payments necessarily made or to be made by said trustee hereunder. And in the event that the first party shall fail, refuse or neglect, for a period of seven days after May 20th, 1930, and quarterly thereafter, during the existence of this trust, to pay the sum of $150 to the second party, or to any guardian appointed for the children of first and second parties hereinafter referred to, like procedure may be had and the necessary steps taken by the trustee to enable it to make the payments to the second party or to reimburse itself for payments so made as hereinbefore provided as to said monthly payments of $300. It being the intention of the parties that the payment of $300 per month and $150 quarterly shall not be permitted to lapse through the failure, neglect or refusal of the first party. In order that the trustee may be more fully advised of the payment or non-payment of the aforesaid amounts when due, the said monthly and quarterly payments respectively shall be paid through the trust department of the said trustee bank by the first party.

"(2) Any payments to the second party out of the principal of the trust hereby created shall not relieve the first party from his obligation to make such monthly and quarterly payments respectively. The second party shall have the right to take all necessary steps to require the first party to reimburse said trust fund for any payments from the principal fund so necessarily made to second party. And any moneys coming into the trustee's hands. as reimbursement for funds expended by it as aforesaid shall be invested and reinvested as hereinafter provided.

" (3) It is agreed that the date of birth of the minor child, Hope, the natural daughter of the first and second parties, is June 23rd, 1921, and that the date of birth of Suzanne, the legally adopted child of the first and second parties, is August 17th, 1924. And in the event of the death of the first party prior to the death of the second party, and prior to the death or attaining of legal age of twenty-one years by each of said children, then and in that event the trustee shall pay to the second party, or to any guardian appointed for said children, or either of them, any amounts required for the maintenance, support and education of said children, or the survivor of them, upon the demand of the first party and/or guardian, not exceeding the sum of $200 per month until such fund is exhausted or said children shall attain legal age as aforesaid.

" (4) In the event that all monthly and quarterly payments respectively are made by the first party as hereinbefore provided, the trustee shall transfer and deliver all of the stock or proceeds then remaining in its hands, to the said children, Hope Troyer and Suzanne Troyer, share and share alike, or to the survivor of them; each child's share of such principal to be paid to it when it shall respectively attain legal age regardless of whether the first party is at that time making said monthly and quarterly payments as hereinbefore provided.

" (5) First party shall have the right to direct the sale of the stock as aforesaid, herewith deposited with the said trustee, on the following conditions and not otherwise:

" (a) Such request shall be in writing and a copy thereof served upon or delivered to the second party or her attorney;

" (b) Said stock shall not be sold at a price that will reduce the principal amount of said trust to less than $15,000, nor shall a portion thereof be sold at a price which, if the entire amount of said stock were sold, would produce less than $15,000, unless at said time or times the first party shall deliver to the trustee an amount of cash sufficient to make up any such possible

deficit; it being the intention of the parties that said trust fund shall at all times be kept at not less than $15,000;

"(c)  No sale shall be ordered or made at any time when first party is in default in any of the aforesaid monthly or quarterly payments hereinbefore provided for.

"(6)  In the event said trustee sells any of the stock so deposited with it as provided in the preceding paragraph, it shall have the power and it shall be its duty to invest and/or reinvest the proceeds as elsewhere herein provided.  Should any stock dividends be declared upon the stock so deposited with and delivered to the trustee, while said stock is so held by it, the same shall be issued to the first party or his assigns, or if not so issued to him then the trustee will, upon demand, transfer by endorsement any such stock dividends to the first party, or his assigns; provided, however, that no such stock shall be issued, endorsed or delivered to the first party or his assigns if the principal of said trust at said time so held by the trustee is less in market value than $15,000, or if the issuance, delivery or transfer of such stock dividends would have the effect of so reducing the principal of said trust based upon the market value thereof, when delivery is demanded by first party, but in no event within less than thirty days after the Continental Can Company reopens its books after such stock dividend.  Any such stock dividends in excess of said principal sum of $15,000 shall be transferred, endorsed and delivered to the first party or his assigns.  All cash dividends on said stock held by the trustee shall be paid over to the first party so long as the trustee receives the same, and so long as the first party is not in default in any of the monthly or quarterly payments hereinbefore provided for; and if the first party is in default, any dividends so received shall be applied by the trustee to cure said default.

"(7) In the event that any funds come into the hands of the trustee, other than cash dividends and the monthly and quarterly payments aforesaid, either as proceeds of the sale of all or any of said stock, or by

the replenishing of the trust as hereinbefore provided, the trustee shall hold, manage, care for and protect, invest and/or reinvest in bonds, stock, real estate mortgages or income producing securities or property, in the discretion of said trustee, and all in accordance with its best judgment and discretion, without being restricted in any way whatsoever to investments the trustee is or may hereafter be authorized by law to make; the trustee shall have the power to sell and convey any and all of that portion of the trust estate represented by its investments and/or reinvestments from time to time for such prices and upon such terms as in its discretion shall be deemed proper; that no person dealing with the trustee shall be obliged to see to the application of any money paid to it; if it is thought advisable by the trustee to invest any of the funds of the principal of this trust coming into its hands as aforesaid, in real estate mortgages or participating certificates in real estate mortgages, the trustee is authorized to negotiate such mortgages directly on behalf of this trust, or it may purchase or sell from or to itself for the account of this trust any such mortgages or participating certificates at such prices or upon such terms as the same may be bought or sold in the open market, or may buy or sell the same in the open market as it shall elect. As to any participating certificates so purchased for this trust the trustee shall not be required to hold in the files of this trust the original mortgage or deed of trust securing same, or the fire, title or other insurance policies or abstracts or appraisals pertaining thereto, and in lieu thereof the trustee may accept a certified statement of the mortgagee as to any such items.

"The trustee, in its election (but it shall not be under any obligation to do so) may make advances to or borrow money for the trust estate upon such terms and conditions, at any time or times and for such purposes as it may deem desirable or proper for the improvement, protection or preservation of the trust estate; and for the repayment of such advances with interest the trustee shall have a lien upon the trust estate, and for the sum so borrowed may issue its prom-

issory note or notes as trustee to secure the repayment by mortgaging or pledging any part or all of the trust estate for any period within or extended beyond the terms of the trust.

"The trustee is empowered and authorized to vote in person or by proxy all of the stocks or other securities held by it under the trust hereby created, and may participate in any reorganizations, protective committees or other undertakings deemed expedient and advantageous to this trust estate, and to exercise any and all rights or powers incident to any of the properties held in this trust.

"The trustee shall submit to the first and second parties, when requested so to do in writing, a statement showing the true status of the trust estate.

"The trustee shall not be held liable for any losses incurred or sustained by reason of matters beyond its control, nor for errors in judgment, nor in the exercise of its discretion, nor in making investments, nor for any loss whatsoever, unless the same shall happen through its own wilful default or gross negligence. In case any dispute or doubt arises as to the construction of this instrument, or as to the rights, liabilities or duties of the trustee hereunder, the trustee may employ and take the advice of such counsel as it may select, and shall be fully protected in acting upon and following such advice.

"In general, the trustee shall have every power and discretion in the collection, control and management of the trust estate that it would have if it were the owner thereof in its individual capacity, subject only to the exercise of good faith and compliance with the terms of this agreement; and the interpretations placed upon this agreement and the terms thereof by the trustee shall, in the absence of fraud, be conclusive.

"(8) It is agreed that the $300 monthly payments hereinbefore provided for shall be reduced by $100 per month upon the remarriage of the second party, and by $100 upon the death of each of said children prior to their attaining the age of twenty-one years. The payments to and by the trustee shall be upon the basis of $300 per month until it is furnished satisfactory

evidence of the happening of any of the contingencies aforesaid.

"(9) In the event the trustee shall change its name, merge with another institution, or undergo any corporate change as a result of which it, under the name and style of First Seattle Dexter Horton National Bank, shall cease to do a trust business, and the reorganized or successor corporation shall have trust powers, then such successor corporation shall succeed as trustee hereunder with like powers and duties in all respects as herein given to First Seattle Dexter Horton National Bank. The provisions of this article shall apply in the same manner to any successor trustee.

"(10) Trustee shall receive for its services hereunder compensation as provided in Exhibit 'B' hereto attached and made a part hereof.

"(11) This trust agreement shall not be revocable except by the written agreement of the plaintiff and defendant."

A final decree of divorce, in which the interlocutory order was "in all things confirmed and made final," was entered October 14, 1930. On March 3, 1933, the defendant filed a petition for modification of the decree. The petitioner prayed for reduction of the payments from three hundred dollars monthly and one hundred fifty dollars quarterly to fifty dollars monthly over and above the total dividends received on the stock on deposit with the trustee. The petition was denied, on the ground

". . . that the said interlocutory order of divorce and final decree of divorce entered herein and the stipulation and property settlement and trust agreement made and entered into between the parties herein are and constitute a final and complete property settlement and agreement between the parties, not subject to modification and/or revocation except upon the written agreement of the parties, and that no agreement in writing or at all, has been made or had between the parties in any manner revoking, altering or

modifying the same, and that the Court is without jurisdiction to modify said interlocutory order of divorce and final decree of divorce entered herein."

The defendant has appealed from that decree.

The only question presented by the appeal is whether the court had the power to modify the decree.

It clearly appears from a reading of the above-quoted agreement that same was both a property settlement and an agreement for alimony. The parties agreed, in paragraph 1, that respondent's complaint would be considered as one for divorce, and that she would be awarded a divorce if, by the court, found entitled thereto. Paragraph 2 provided that, if satisfactory to the court, the respondent would be awarded certain real and personal property. By subdivision (f) of paragraph 2, the parties agreed that

". . . the decree shall also provide for the payment to the plaintiff by the defendant of three hundred dollars ($300) per month, and the additional sum of one hundred fifty ($150) dollars quarterly, beginning May 1st, 1930, *for the maintenance, support and education of the two minor children, and for the maintenance of the plaintiff; . . . Such monthly payments shall be secured as hereinafter provided.*" (Italics ours.)

Paragraph 3 provides for award to the appellant of certain personal property. Paragraph 4 provides for the creation of the trust to secure the payment of the monthly and quarterly awards "for the maintenance, support and education of the two minor children; and for the maintenance of the plaintiff" as provided in subdivision (f) of paragraph 2 of the agreement.

Under the terms of paragraph 4, the appellant was required to deposit with a designated bank, as trustee, corporate stock of the value of fifteen thousand dollars, to be used by the trustee in accordance with a

trust agreement separately entered into between the respondent and appellant with the trustee. If the appellant failed to pay, within a stated time after due date, the awards provided by paragraph 2 of the agreement, the trustee was authorized to advance to the respondent "the amount so in default and reimburse itself from sale of the stock." In the event that it became necessary for the respondent to receive any payment from the principal of the trust fund, the appellant nevertheless remained obligated to make such payments so defaulted, "which said payments shall be made to the said trustee and shall go into said trust fund to reimburse said fund." If the death of the appellant occurred prior to the death of the respondent, and prior to the time the children attained the age of twenty-one years, the trustee was required to pay to the respondent any amounts required for the support and maintenance of the children, not exceeding two hundred dollars monthly. Subdivision (g) of paragraph 4 provides that "such trust agreement shall not be revocable except by written agreement of the plaintiff and defendant. . . ."

While the purpose is patent to insure the regular payment of the alimony and support money provided by subdivision (f) of paragraph 2, there is nothing in the agreement to the effect that any part of the monthly and quarterly payments is awarded in lieu of a claim of the respondent in some particular piece of property. The finding that the agreement constituted a just and reasonable award to the respondent as and in lieu of all alimony and property rights, and the interlocutory order approving and adopting the agreement

". . . as a just and equitable division and disposition of the property of the plaintiff and defendant

and as a just and reasonable award of alimony to the plaintiff for herself and the said minor children, and in settlement of the property rights of the said plaintiff and defendant,''

mean no more than that the court found and decreed that the settlement agreed upon by the parties was a just and reasonable award of alimony as well as a property settlement.

True, the agreement as to the division of the property and the agreement as to the award for maintenance of the respondent and for the maintenance and education of the two minor children are contained in the same contract. That, however, does not make such contract solely a property settlement. The provisions respecting the property settlement are definite and specific. Section (f) of paragraph 2 of the contract definitely and specifically provides that the monthly and quarterly payments are ''for the maintenance, support and education of the two minor children, and for the maintenance of the plaintiff,'' such payments to be secured, as provided in paragraph 4, by the creation of a trust fund.

That the contract of the parties was made a part of the court's decree, does not preclude modification of the decree for alimony for the benefit of the minor children and for the benefit of their mother. In accepting the agreement of the parties as to the amount of alimony to be allowed to the wife, and in incorporating that agreement in and making it a part of the decree, the amount of alimony was fixed by decree of court. Where, as in the case at bar, the decree for alimony is for the benefit of minor children and their mother, and the amount which is to go to the wife as alimony and the amount which is to go to the children for support are not segregated, the power of the court to modify the decree continues as long as the minor

children are under the protection of the court. *Hart v. Hart,* 174 Wash. 316, 24 P. (2d) 620.

The parties can not, by contract, and the court can not, in an original decree, make a provision for alimony for the benefit of a wife and her minor child (if the amount which is to go to the wife as alimony, and the amount which is to go to the child for support are not segregated) which would be controlling upon a subsequent hearing on petition for alteration or modification of the agreement or decree, to meet changed conditions.

"So long as there are minor children whose maintenance and welfare are provided for in the original decree, there is a continuing jurisdiction in the court to modify that decree, having regard to their welfare." *Delle v. Delle,* 112 Wash. 512, 192 Pac. 966, 193 Pac. 569.

The judgment is reversed.

BEALS, C. J., and STEINERT, J., concur.

MAIN, J., concurs in the result.

MITCHELL, J. (dissenting in part)—I concur in the majority opinion to the extent only that the court has power to modify the decree with respect to the care, support and maintenance of the minor children. The matter of alimony or allowance for the divorced wife, · however, was fixed by the contract of the parties and carried into the decree without any power in the court, reserved or otherwise, to modify it in the original action, and is final. *Cooper v. Cooper,* 146 Wash. 612, 264 Pac. 1.