[No. 35920. Department One. January 18, 1962.]

ROY MARTIN, JR., *Respondent,* v. MARJORIE MARTIN, *Appellant.**

*Reported in 368 P. (2d) 170.

Motion filed in divorce proceedings for order requiring payment of support. Appeal from denial of motion.

*Rummens, Griffin, Short & Cressman,* for appellant.

*Lycette, Diamond & Sylvester,* for respondent.

HILL, J.—We are here concerned with the circumstances under which a father may claim credit (on the payments required by a divorce decree to be made to the mother as support money for a minor child) for payments made by him directly to or on behalf of the child, instead of to the mother.

In the instant case, the divorced father was required by the divorce decree, entered by the King County Superior

Court in 1956, to pay $100 a month to the mother for the support of a minor son until his majority. After the divorce, the mother had moved to Santa Barbara, California, and the father to Vancouver, British Columbia.

The son became nineteen in January, 1959, and the father made no payments to the mother during 1959 and no payments during the first ten months of 1960. This would make an arrearage in payments, provided for in the decree, of $2,200.

Where the son was during the first five months of 1959 is not clear, but presumably he was in school. It is conceded that he spent the months of June, July, August, and September, 1959, with his father in Vancouver, British Columbia. In the latter month he entered the University of San Francisco where his father paid his tuition and board and room, apparently until the Christmas holidays; the total amount paid by the father to the university being $674.31. The son apparently spent the Christmas holidays with his mother in Santa Barbara, California, and it seems to be conceded that he lived alone in Seattle from January to June or July, 1960.

By this proceeding, a motion in the divorce action for an order requiring the father to pay support money to the mother, she was not attempting to establish her right to the entire $2,200 for the twenty-two months in 1959 and 1960 for which no payments had been made to her; instead she asked for $600, or $50 a month for maintaining a home in Santa Barbara in 1959, to which the son might come when not in school; and $400 for the period for which she had maintained a home for him in Seattle, beginning in June or July, 1960, a total of $1,000.

The father, in his answering affidavit, states that he has paid the University of San Francisco the $674.31 above referred to; the Shell Oil Company $373.60 during 1959 and 1960 on behalf of his son (who had the use of his credit card); and $150 direct to his son in October, 1960. In addition to these three specifically enumerated items, the father avers that his son has received from him:

". . . in excess of $2,200.00 in the period from June, 1959 to this date [October 31, 1960]. Some of these monies went directly to his creditors, some to the defendant [the mother] and still other sums to the said William Martin [the son]."

The mother denies that she received any money from the father during the twenty-two months in question. She concedes, however, that the boy lived with his father in Vancouver, British Columbia during the months from June to September in 1959, and that the father paid his tuition and expenses at the University of San Francisco beginning in September, 1959. It is averred, however, that she maintained a home in Santa Barbara "while her son was attending college so that she would have a place for him when he was not in school," and that he stayed in that home "during the 1958 and 1959 holiday seasons and at other times."

The trial court on the basis of the affidavits[1], filed in support of and in opposition to the motion (from which we have taken our statement of the facts) denied the motion[2] without giving any reason for the action taken.

The mother appeals.

This is not a contempt proceeding, nor is it an attempt to enforce a judgment for accrued support-money pay-

---

[1]The father, the respondent here, urges that these affidavits cannot be considered as they are not before the court by way of a statement of facts, but only in the transcript. The affidavits considered by the trial court are clearly identified by that court in the order appealed from and are in the transcript, hence need not be brought up by way of a statement of facts to be considered on review. *Zarelli v. Superior Distributing Corp.* (1957), 51 Wn. (2d) 154, 155, 316 P. (2d) 465; *State v. Fackrell, Jr.* (1954), 44 Wn. (2d) 874, 879, 271 P. (2d) 679 (quoting *Whittaker v. Weller* (1944), 21 Wn. (2d) 716, 722, 152 P. (2d) 957, 155 P. (2d) 284).

[2]The decretal portion of the order denying the motion read: "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant's motion requiring the plaintiff to pay Six Hundred ($600) Dollars for 1959 and Four Hundred ($400) Dollars for the months of July thru October 1960 to the defendant for the support of the parties' minor son, William Martin, and requiring the plaintiff to pay all future support monies directly to the defendant, be and the same is hereby denied."

ments; but it is apparently a bona fide attempt by both parties to have adjudicated the amount due the mother under the child-support provision of the divorce decree, it being conceded by the mother that something less than the full amount provided in the decree is due.

Treated as such an attempted adjudication[3], it appears, even from the scanty record, that the mother was entitled to receive the support payments for the period during which the son was living with her in Seattle, which was the situation at the time the motion was made in October, 1960; there being no showing that any money was paid by the father to, or for, the son during that period, except the sum of $150, and that the mother had expended in excess of $400 in making a home for and meeting the needs of the son during that period.

The state of the record is not to be commended. Our use of "apparently," "it seems," and "presumably" in our recital of the facts indicates that certainty was lacking in many details.

If it had been the responsibility of the mother, as the maker of the motion to make the record certain, the denial of the motion would certainly be justified; but her responsibility ended with a showing that there was a decree providing for payments for child support to her and that no payments had been made thereunder for the twenty-two months last past.

■ Our cases hold that accrued installments of support money, under a divorce decree, are vested and may not be retrospectively modified. *Koon v. Koon* (1957), 50 Wn. (2d) 577, 579, 313 P. (2d) 369, citing numerous cases. The total obligation of the father, in this case, is a matter of simple calculation. The defense is payment, and the burden of proof of payment rests upon him and he must assume the risk of any failure by reason of indefiniteness.

[3]We have been concerned with the form of the proceeding; apparently a motion for an order to pay part of an existing judgment, directed to a nonresident judgment debtor. However, we have taken the case just as the parties have presented it to us, and considered it upon its merits.

*Openshaw v. Openshaw* (1935), 86 Utah 229, 42 P. (2d) 191; *Briggs v. Briggs* (1946), 178 Ore. 193, 165 P. (2d) 772, 166 A. L. R. 666; *Goeller v. Goeller* (1961 Mo.), 346 S. W. (2d) 545.

A showing by the father that approximately $3,500 has been paid directly to the son or on his behalf during the twenty-two-month period does not, of itself, prove payment of the accrued installments due the mother during that period, although she concedes that $1,200 of that amount is properly creditable thereon.

The general rule is to the effect that when a father is required by a divorce decree to pay to the mother money for the support of their dependent children and the unpaid and accrued installments become judgments in her favor, he cannot, as a matter of law, claim credit on account of payments voluntarily made directly to the children. *Koon v. Koon, supra; Briggs v. Briggs, supra.* However, special considerations of an equitable nature may justify a court in crediting such payments on his indebtedness to the mother, when that can be done without injustice to her. *Briggs v. Briggs, supra.* The courts are justifiably reluctant to lay down any general rules as to when such credits may be allowed.

Our cases, too, differ[4] as to what constitutes special considerations of such an equitable nature as to justify an exception to the general rule; but there can be no question as to the father's responsibility to prove that they exist, if he is to have any payments he has made directly to or on behalf of the child credited to his accrued indebtedness for child support. There is nothing in the affidavit of the father, in this case, that pinpoints what support he gave his son during the four months or more in 1960, when the son was living with his mother in Seattle, except for a $150 payment to the son in October.

While the father is to be commended for making it pos-

---

[4]See our recent case of *Koon v. Koon* (1957), 50 Wn. (2d) 577, 313 P. (2d) 369. In the majority and the concurring opinions our cases are reviewed and considered.

See also article in 33 Wash. L. Rev. (1958), 149.

sible for his son to go to the University of San Francisco in the fall of 1959, he must have realized that the mother could not have taken care of the necessary expenses of a university education out of an allowance of $100 a month, and that he would have to assume at least some of the expenses in addition to the support allowance. See *Moore v. Mackay* (1954), 132 N. Y. S. (2d) 813; *Hyde v. Hyde* (1936), 143 Kan. 660, 56 P. (2d) 437.

■ Nor can we agree with the father's contention that the mother failed to maintain a home for their son, because she lived in Santa Barbara, California while the son was attending the University of San Francisco. A parent having custody of a child obviously does not have to maintain a home in the community where the child attends an institution of higher learning. *Hyde v. Hyde, supra.*

In *Briggs v. Briggs, supra,* where the father furnished substantially all of the finances for the college education of the two children, the court points out that the wife (p. 202),

". . . continued to provide a home for the accommodation of the children who were still in her legal custody and who at times returned to her."

As we understand the record here, the mother is willing to credit the father with $50 a month for all of 1959, during seven months of which the son was with the father or was attending the University of San Francisco, claiming, however, that she was entitled to $50 a month during the year for maintaining a home in Santa Barbara to which the son could come and to which he did come during holiday periods and at other times.

It might well be that the father, who was during that seven months paying all of the son's living expenses, could have shown that the mother was actually at no additional expense in maintaining a home for her son in Santa Barbara, over what her own living expenses would have been during that period, but no proof was offered.

■ No amount paid to the University of San Francisco, over and above the payments of $100 a month required by

the decree for the months the son was in attendance there, has any relationship or bearing on the father's obligation to pay support money which has accrued under the terms of the divorce decree. The payments to the Shell Oil Company have no relationship whatever to the father's obligations to pay support money to the mother.

The payments the father has lumped in the $2,200 to the son or his son's creditors (see page 470) is not sufficient without further itemization as to time, place, and purpose, to entitle them to consideration as payment. Lavish expenditures at some other time and place cannot be offset against the payments due the mother during the period of four months or more in 1960 when the son was living with her in Seattle and she was making substantial payments on his behalf.

The father's final contention is that, even if he is responsible for the $1,000 asked for by the wife, he is entitled to a set off of $990 for overpayment on alimony.[5] This we cannot consider because the overpayment is flatly denied by the wife. Nor is the briefing adequate on the question of whether a divorced husband, ordered by a Washington court to pay his wife $300 a month alimony, can satisfy that requirement by making payments of $255 a month because the country where he chooses to live imposes a 15 per cent tax on payments made to nonresidents of that country.

We have little concern about how this particular matter was, or will be, disposed of by the trial court. The son has attained his majority; if he has suffered at all during the twenty-two months in question, it is because his parents have expended too much, rather than too little, upon him.

---

[5] This claim, as made in the father's affidavit, is as follows: "THAT being a resident of Canada I am required under Canadian law to pay to the Canadian Department of Internal Revenue 15% of any monies paid to any non-resident or non-Canadian. Under this law I am entitled to pay the defendant the sum of $255.00 per month only, instead of the $300.00 she has received each month. The defendant has received over payment in the sum of $990.00 calculated on a period of twenty-two months that the Order for alimony has been in effect."

We set this out in full, because the father's (respondent's) brief attempts to deal with the $990 on a different theory.

Our concern is that this appeal having been taken, we should not make some bad law by reason of its unusual circumstances, particularly the fact that the son was a mobile youth approaching his majority who apparently exercised his own choice in determining whether to live with his father or mother, or neither.

Because of doubt as to the reasons for the trial court's action and because, despite all the uncertainty in the record it appears that if the trial court was disposing of this matter on the merits, the husband had failed to establish his defense of payment to at least a substantial portion of his accrued obligations, we hereby set aside the order denying the mother's motion and instruct the trial court to reconsider it; and, on such reconsideration, to call for such further showing by either of the parties as the court may desire; and to enter an order consistent with the burden of proof being on the father to show special considerations of an equitable nature, which would entitle him to credit for the payment of part or all of his accrued payments, without working an injustice on the mother.

The appellant is entitled to her costs on this appeal.

FINLEY, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.