[No. 39220. Department Two. October 24, 1968.]

GEORGIA H. FRENCH, *Respondent*, v. LOUIS D. FRENCH, *Appellant.**

*Reported in 446 P.2d 332.

*Comfort, Dolack, Hansler & Billett (Robert A. Comfort, of counsel), for appellant.*

*Johnson & Dixon, by Brooks K. Johnson, for respondent.*

OTT, J.†—April 21, 1964, Georgia H. French was granted a decree of divorce from Louis D. French in the Superior Court for Pierce County. The decree awarded the care, custody and control of Louis D. French, Jr., age 17, and William J. French, age 14, to Georgia H. French subject to reasonable visitation privileges granted to Louis D. French. The court approved the property settlement proposed by the parties, which provided, *inter alia,* that Louis D. French should have a non-interest bearing lien in the sum of $5,000 on the residence property awarded to Georgia H. French. The $5,000 lien was to mature September 15, 1972, and was subject to the following forfeiture proviso:

> Time is of the essence in connection with payment by defendant of child support as hereinafter provided. In the event that defendant at any time is delinquent in any amount with reference to such support payments, and the delinquency continues for a period of 100 days, such lien will be deemed forfeited and void. Inasmuch as such support payments are to be made through the Pierce County clerk, the records of the Pierce County clerk relative to receipt of such payments shall be conclusive as to whether or not defendant is delinquent, subject only to the possibility of clerical error being established on the part of such office within six months after any purported delinquency occurs.

The court approved the support payments, set out in the contract, in the sum of $100 per month for each child. Prior to the divorce, Louis D. French moved to San Francisco,

---

†Judge Ott is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

California, where he pursued his profession as a carpenter. He paid to the clerk the following sums for the support of his two children:

| | |
|---|---|
| May 15, 1964 | $200 |
| June 18, 1964 | $100 |
| July 17, 1964 | $100 |
| August 24, 1964 | $100 |
| October 5, 1964 | $100 |
| October 26, 1964 | $100 |

November 7, 1964, Georgia H. French had a mental breakdown. On November 13, 1964 she was judicially declared to be mentally incompetent and was committed to Western State Hospital. Louis D. French, Jr., and William J. French were detained in Remann Hall in Tacoma pending an adjudication of dependency. On November 18, 1964 Louis D. French employed an attorney in Tacoma who secured an order relinquishing the children to Mr. French and a dismissal of the juvenile dependency proceedings. On November 24, 1964, transportation costs to San Francisco having been paid by Mr. French, both children were placed under his care and control.

On December 9, 1964 George W. Dixon qualified as guardian for Georgia H. French. As guardian, he sold the residence property for cash, and the amount of the Louis D. French lien was deposited in escrow pending the determination of this litigation. On November 12, 1965, the guardian filed and served a motion in the divorce proceedings to declare defendant's lien on the residence property forfeited and void. The motion was supported by an affidavit which itemized the payments made to the clerk's office, as above indicated, and stated that defendant had failed to perform the specific condition upon which the existence of the lien was dependent. Louis D. French answered the petition for forfeiture alleging that Louis D. French, Jr., had resided with him in San Francisco from June, 1964, through the first week in November, 1964, during which time Louis D. French, Jr., enrolled in high school; and that defendant had paid to the clerk the sum of $100 each month during the

time William French resided with Mrs. French. He further alleged that he had expended more money for the care and support of the children than the decree required; that he should be allowed credit for such expenditures; and that the forfeiture should therefore be denied.

The cause was heard in the Superior Court for Pierce County. The trial court found that Louis D. French had failed to perform the specific condition upon which the existence of the lien was dependent. From entry of the judgment declaring a forfeiture of the $5,000 lien, Louis D. French has appealed.

There is no substantial factual dispute. It is conceded that $500 support money was not paid to the clerk as provided by the agreement of the parties and decree of the court. Our query on appeal is: Should appellant be allowed a credit of $100 per month for the 5 month period he cared for and directly supported Louis D. French, Jr.?

The trial judge in his memorandum opinion stated, *inter alia*:

> The Court's ruling is based solely upon the property rights of the parties and the contractual agreement that exists between them.
>
> In short the Court is ruling on the contract, gentlemen, not equity, . . . .

■ The property settlement agreement did more than settle the property rights of the parties. Paragraph nine provided in part that the defendant should pay the sum of $100 per month for the support of each of the minor children until each child reaches the age of 21 or is self-supporting, whichever occurs first. Paragraph seven, quoted above, predicated forfeiture of the $5,000 lien upon the nonpayment of child support. The property settlement portion of the agreement, which was adopted by the court, is not subject to modification. RCW 26.08.110. The support provisions are subject to court modification, RCW 26.08.110, and therefore are subject to the application of equitable principles.

■ This court has said that the binding effect of future child support payments extends to the children's cus-

todian, "only for the period during which the children's dependency upon their custodian continues". *Ditmar v. Ditmar,* 48 Wn.2d 373, 375, 293 P.2d 759 (1956). Although no general rule has been established, a credit has been allowed the parent having the duty to furnish support payments during extended periods when such parent totally supports the child elsewhere. *Gainsburg v. Garbarsky,* 157 Wash. 537, 289 Pac. 1000 (1930); *State ex rel. Meins v. Superior Court,* 159 Wash. 277, 292 Pac. 1011 (1930). Equity does not compel a person to pay or provide double support for his children. *Briggs v. Briggs,* 178 Ore. 193, 165 P.2d 772, 166 A.L.R. 666 (1946). The person ordered to make support payments will not receive a credit, however, for payments voluntarily made directly to or on behalf of the child. *Bradley v. Fowler,* 30 Wn.2d 609, 192 P.2d 969, 2 A.L.R.2d 822 (1948); *Koon v. Koon,* 50 Wn.2d 577, 313 P.2d 369 (1957); *Martin v. Martin,* 59 Wn.2d 468, 368 P.2d 170 (1962). In the *Martin* case, *supra,* the court refused to allow a credit to the father for money spent on his son's education, transportation expenses, and money given directly to his son because these payments were made voluntarily and had no relationship to the father's obligation to pay support money. The court indicated that the father should receive credit for the time his son resided with him.

▌ Whether money or support is furnished voluntarily is a factual determination. In the instant case, during the 5 months that Louis Jr. lived with his father in San Francisco, the father did not send the clerk the $100 per month support money for Louis D. French, Jr. The son's enrollment in school in San Francisco evidenced his intent to remain with his father indefinitely. Georgia H. French accepted the payments for the child under her care and made no demand of support for Louis D. French, Jr. It is evident from the conduct of the parties that support directly furnished Louis D. French, Jr., by his father was provided in lieu of the required $100 payments, and neither party interpreted such support as voluntary. We conclude that in caring for his son, Mr. French was not a mere volunteer.

The trial judge, in his memorandum opinion, discussed the equities of this case as follows:

I might state that this is a particularly hard case for the Court, because I have all the sympathy in the world for Mr. French in the problems he has had and I respect him for the actions he has taken. I think that he has conducted himself as a concerned and thoughtful parent. I don't believe the Court in this particular proceedings is dealing in equities, gentlemen.

The trial court erred in failing to apply these equitable principles to the instant case. We hold that the record, in light of these principles, would not sustain a forfeiture of appellant's lien.

The judgment is reversed and the cause is remanded with instructions to reinstate the lien.

FINLEY, C. J., HUNTER, HAMILTON, and NEILL, JJ., concur.