[No. 3064-2. Division Two. September 19, 1979.]

*In the Matter of the Marriage of* JULIA ELIZABETH CHILD OLSEN, *Appellant, and* JOHN EDWARD OLSEN, *Respondent.*

*J. Rex Behrhorst,* for appellant.

*Ronald N. Richards,* for respondent.

PEARSON, C.J.—Julia Olsen appeals from an order reducing the amount of support required to be paid her by her ex–husband, Jack. She contends that the trial court lacked jurisdiction to reduce this obligation as it was controlled by a separation agreement between the parties precluding modification except by mutual consent. Respondent, Jack

Olsen, cross–appeals on the ground that the court's reduction did not go far enough. He argues that he should have been given credit for past payments made in excess of his legal obligation. We affirm the judgment of the Superior Court.

Julia and Jack Olsen were married in Kansas in 1954 and signed a separation agreement in 1966, while respondent was living in New York and petitioner was living in Connecticut. The agreement stated that petitioner was to receive the family car, proceeds from the sale of the family home, all personal property (except respondent's personal effects), and custody of the couple's three children, then ages 10, 7 and 6. Respondent agreed to pay $200 per week "support." Paragraph 11 of the agreement provided that the agreement would be nonmodifiable absent mutual consent.

Later that same year, the parties obtained a Mexican divorce and had the separation agreement incorporated by reference in the divorce decree. The decree states that respondent was present in Mexico at the time of the divorce and had resided there for the appropriate length of time, and that petitioner appeared through her attorney. The validity of this decree has not been challenged. *See generally Rosenstiel v. Rosenstiel,* 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965).

In 1968 petitioner, who was then living in Kansas, and respondent, who had moved to Colorado, signed an "addendum" to the 1966 separation agreement whereby respondent agreed to increase the support to $1,100 per month and to make an annual lump sum payment of $4,000 for his oldest daughter's education. All other terms of the original agreement were to remain in effect.

Following the signing of the addendum, respondent's annual earnings steadily declined from $87,861 in 1969 to $26,657 in 1975. In October 1974, he stopped making support payments (except for $1,000 in November 1974). In September 1975, petitioner, who was still residing in Kansas, filed suit against respondent, now living in

Washington, for past support and specific enforcement of the separation agreement. Respondent answered by filing a counterpetition for modification of the support award. He called the court's attention to the drastic reduction in his income, his impaired eyesight which jeopardized his future earnings, and petitioner's recent inheritance of one–fourth of an estate valued at $472,380.66.

The trial court awarded petitioner $12,200 for arrearages which accrued between October 1974 and September 1975 when the petition for modification was filed. However, the court refused to specifically enforce the agreement for future payments and modified the support terms as of October 1975, to provide for $175 per month per child and computed the arrearages between October 1975 and May 1977 as $7,000 (the oldest child having married).

Neither party challenges the award of arrearages for October 1974 to September 1975. It is well settled that a court may not modify maintenance and support payments retroactively. *Pace v. Pace,* 67 Wn.2d 640, 409 P.2d 172 (1965). At most the court can only modify maintenance and support provisions as of the date of the filing of the modification petition. *See Bowman v. Bowman,* 77 Wn.2d 174, 459 P.2d 787 (1969).

Petitioner contends that the court below should not have considered the petition for modification because respondent's support obligation was fixed by the terms of the separation agreement, which included a nonmodification provision. She states that her argument is the same whether the suit is based on the Mexican divorce decree (which incorporates the separation agreement) or the 1966 separation agreement and its 1968 addendum. We are convinced that under Washington law[1] a trial court is never

---

[1]Potentially, the laws of New York, Connecticut, Kansas, Colorado, and Mexico could have played on the outcome of this case. *See, e.g., Lubin v. Lubin,* 144 Cal. App. 2d 781, 302 P.2d 49 (1956). However, no attempt was made to prove the applicable law of any of these jurisdictions; consequently, we presume their laws are the same as ours. *Granite Equip. Leasing Corp. v. Hutton,* 84 Wn.2d 320,

absolutely bound to enforce an agreement between a husband and wife regarding support payments and may, under appropriate circumstances, decrease the obligation of the spouse who promised to make support payments.

## MODIFICATION OF DECREE

■ Prior to 1933, the courts had authority only to modify decrees for child support and decrees which did not segregate alimony from child support. *See Blethen v. Blethen,* 177 Wash. 431, 32 P.2d 543 (1934). An amendment to the divorce law in 1933 gave the courts authority to modify both alimony and support awards. *See Laws of 1933, ch. 112, § 2; Duncan v. Duncan,* 25 Wn.2d 843, 850, 172 P.2d 210 (1946). Subsequently, our Supreme Court stated that the court's power to modify a judicial decree regarding alimony and support could not be restricted by an agreement between the parties, even if that agreement is incorporated in the decree, unless the alimony and support payments are part of the division of property. *See, e.g., Millheisler v. Millheisler,* 43 Wn.2d 282, 261 P.2d 69 (1953); *Von Herberg v. Von Herberg,* 6 Wn.2d 100, 106 P.2d 737 (1940); *Troyer v. Troyer,* 177 Wash. 88, 30 P.2d 963 (1934). We presume the rule applies whether the agreement is predecretal (as was the 1966 agreement in this case) or postdecretal (the 1968 addendum). *See Gorvin v. Stegmann,* 74 Wn.2d 177, 443 P.2d 821 (1968); *In re Estate of Garrity,* 22 Wn.2d 391, 156 P.2d 217 (1945). *See also Warrick v. Hender,* 198 So. 2d 348 (Fla. Dist. Ct. App. 1967); *Page v. Page,* 30 Ill. App. 3d 514, 334 N.E.2d 212 (1975); *Blaufarb v. Blaufarb,* 18 Misc. 2d 334, 186 N.Y.S.2d 806, *aff'd,* 9 App. Div. 2d 86, 191 N.Y.S.2d 785 (1959); *Strong v. Strong,* 548 P.2d 626 (Utah 1976).

The 1973 dissolution act appears to have made a small inroad on the courts' authority to modify maintenance

---

525 P.2d 223 (1974); *Nissen v. Gatlin,* 60 Wn.2d 259, 373 P.2d 491 (1962). Petitioner's attorney did refer the court to Kansas law regarding the modification of divorce decrees; however, this authority proved inapplicable as no Kansas decree is involved in this case. *See Curtis v. Curtis,* 218 Kan. 130, 542 P.2d 330 (1975).

awards. It states that a decree of maintenance may be non-modifiable if the separation contract and the decree itself so provide. *See* RCW 26.09.070(7). The 1973 act does not apply to the case at hand because the decree in question precedes the date of the act. Even if the act applied, the decree does not state expressly that the maintenance award is nonmodifiable, nor does the support award segregate maintenance from child support. Therefore, under Washington law, the trial court was free to modify the support provisions of the Mexican decree based on changed circumstances and subject to review only for abuse of discretion. *Mayo v. Mayo,* 75 Wn.2d 36, 448 P.2d 926 (1968).

Petitioner contends that even if the decree is modifiable, she is entitled to a separate cause of action on the separation contract itself. Washington law forbids such a suit if the separation contract has "merged" into the decree. Once a merger occurs, suit may only be had on the decree. *DeRiemer v. Old Nat'l Bank,* 60 Wn.2d 686, 689, 374 P.2d 973 (1962); *United Benefit Life Ins. Co. v. Price,* 46 Wn.2d 587, 283 P.2d 119 (1955); *Bullock v. Bullock,* 131 Wash. 339, 230 P. 130 (1924). Thus, in order to consider petitioner's contract argument, we must first determine whether a merger has occurred.

## MERGER

There is no definitive Washington case concerning the question of merger of a separation agreement into a divorce decree; yet a few general observations can be made. If the prior court decree approves, confirms, or incorporates by reference the terms of a separation agreement, Washington courts will nearly always hold that a merger has occurred, *see Mickens v. Mickens,* 62 Wn.2d 876, 385 P.2d 14 (1963); *Millheisler v. Millheisler, supra,* unless the decree does not adequately identify the agreement that is to be merged. *State ex rel. Ridenour v. Superior Court,* 174 Wash. 152, 24 P.2d 418 (1933), *overruled on other grounds, Decker v. Decker,* 52 Wn.2d 456, 467, 326 P.2d 332 (1958). But ultimately in order to determine whether a merger has

occurred the court will look to the intent of the parties and the court as expressed in the documents themselves. *Robinson v. Robinson,* 37 Wn.2d 511, 225 P.2d 411 (1950).

The 1966 separation agreement provides in paragraph 7:

Nothing herein shall prevent the incorporation of this agreement, this agreement shall not be merged in the decree, but shall survive the same, and shall be binding and conclusive upon the parties for all time.

The subsequent divorce decree did not recite the terms of the separation agreement, but simply stated that the matters of custody and support were to be taken care of as provided in the separation agreement. It then went on to say that the agreement "is incorporated by reference into this decree, is not adjudged[,] but shall in all respects survive the decree."

It is apparent from the language of the 1966 agreement that the parties did not intend to merge the agreement with the subsequent decree; and, more importantly, it is clear from the language of the Mexican decree that the Mexican court avoided merging the two. Consequently, we hold there was no merger of the agreement into the decree and the parties were free to pursue their contractual remedies. *See Silvestri v. Slatowski,* 423 Pa. 498, 224 A.2d 212 (1966).

## The Contract

There has been no challenge to the 1966 separation agreement other than respondent's contesting the validity of the nonmodification clause. Otherwise there is no hint of fraud, overreaching, or incapacity involved in the basic agreement. *See In re Marriage of Cohn,* 18 Wn. App. 502, 569 P.2d 79 (1977); *Peste v. Peste,* 1 Wn. App. 19, 459 P.2d 70 (1969). Both parties were represented by counsel and there was consideration on each side to support a contract.

Petitioner argues that the contract consists of not only the 1966 agreement but also the 1968 addendum. Respondent argues that the 1968 addendum is not supported by consideration, and hence not an enforceable modification of a contract. *Rosellini v. Banchero,* 83 Wn.2d 268, 517 P.2d

955 (1974); *Lake Stevens Sewer Dist. v. Village Homes, Inc.,* 18 Wn. App. 165, 566 P.2d 1256 (1977). Although respondent's position has merit, we see no reason to decide this issue because the trial court's modification effectively voided the 1968 addendum. If we were to uphold the trial court, we would not have to pass on the enforceability of the addendum. Therefore, for the sake of argument, we will simply assume that the contract in question consists of the 1966 agreement plus the 1968 addendum.

### MODIFICATION OF CONTRACT

The portion of petitioner's lawsuit that is the subject of this appeal involves a demand for specific performance of a contract, which, of course, is a suit in equity. It is a well settled rule that courts of equity will not enforce contracts that are illegal, against public policy, or unconscionable. *Foster v. Knutson,* 84 Wn.2d 538, 527 P.2d 1108 (1974); *Washington Ins. Guar. Ass'n v. Hill,* 19 Wn. App. 195, 574 P.2d 405 (1978). Strictly speaking, a refusal to enforce such contracts is not a modification; rather, it is simply a denial of a remedy.

Respondent contends that the contract at issue here violates public policy because it requires him to pay support at a fixed rate regardless of his financial situation and petitioner's. *See* RCW 26.09.100; 2 Restatement of Contracts § 369 (1932). If the support agreement involved were for maintenance only, respondent's argument would have some validity,[2] but here the support agreement involves care of children and we find no public policy which prevents a parent from being as generous to his children as he wishes, even if he contracts to pay more support than is legally required. *Kinne v. Kinne,* 82 Wn.2d 360, 363, 510 P.2d 814

---

[2] It is the public policy of this state to require an unemployed spouse to gain employment, if possible, *Dakin v. Dakin,* 62 Wn.2d 687, 692, 384 P.2d 639 (1963), or otherwise become self–supporting. *Cleaver v. Cleaver,* 10 Wn. App. 14, 516 P.2d 508 (1973); *Mose v. Mose,* 4 Wn. App. 204, 480 P.2d 517 (1971). Of course, an agreement to pay a nonmodifiable rate of "maintenance" as part of a property settlement does not violate public policy. *Kinne v. Kinne,* 82 Wn.2d 360, 510 P.2d 814 (1973); *see Thompson v. Thompson,* 82 Wn.2d 352, 510 P.2d 827 (1973).

(1973); *Riser v. Riser,* 7 Wn. App. 647, 501 P.2d 1069 (1972); *Bauer v. Bauer,* 5 Wn. App. 781, 788, 490 P.2d 1350 (1971).[3] Public policy might come into play to prevent enforcement of a contract which would cause the encumbered spouse to go on public welfare, but no proof was offered to that effect in this case. *See Peste v. Peste, supra.*

██ A variation on respondent's public policy argument, and one which we think applicable here, is that a contract for fixed support is unconscionable if its enforcement under changed circumstances would result in "unreasonable or disproportionate hardship or loss" for the encumbered spouse. *See* 2 Restatement of Contracts § 367 (1932). We hold that the support portion of the separation contract between the parties was clearly unconscionable in view of the changed financial condition of the parties and that the trial court properly refused to enforce it. *See Edelman v. Edelman,* 124 N.J. Super. 198, 305 A.2d 804 (1973); *Schiff v. Schiff,* 116 N.J. Super. 546, 283 A.2d 131 (1971); Annot., 154 A.L.R. 323 (1945). *See also Decker v. Decker,* 52 Wn.2d 456, 326 P.2d 332 (1958).

Although the unconscionable support provision is not enforceable, *see Fitzsimmons v. Fitzsimmons,* 116 Wash. 635, 200 P. 305 (1921), respondent is not relieved of his parental obligation to support his children. *Penn v. Morgan,* 7 Wn. App. 794, 502 P.2d 1238 (1972). Despite the absence of a binding contract, the court has inherent power to order him as a responsible parent to pay support. *State ex rel. Ranken v. Superior Court,* 6 Wn.2d 90, 106 P.2d 1082 (1940); *Addy v. Addy,* 240 Iowa 255, 36 N.W.2d 352 (1949); RCW 26.09.100. We find no abuse of discretion, nor does petitioner argue there was any, in the amount of

---

[3]The petition in this case, for which we find no support in public policy, seeks a "modification" downward. The converse situation, however, does have support in public policy. A modification upward is justifiable on the ground that the parents cannot contract away their legal obligations to support their children. *Freidberg v. Freidberg,* 79 Misc. 2d 361, 360 N.Y.S.2d 527 (1974). *See Gorvin v. Stegmann,* 74 Wn.2d 177, 443 P.2d 821 (1968); *Troyer v. Troyer,* 177 Wash. 88, 30 P.2d 963 (1934).

future support awarded by the trial court. Petitioner's only argument goes to the jurisdiction of the court to make this award, and its refusal to enforce the contract terms. Therefore, we leave the trial court's judgment undisturbed.

### SETOFF FOR EXCESS PAYMENTS

Respondent presented evidence that from 1966 to 1974 he paid petitioner more than $12,000 for various household expenses in addition to the payments he was required to make under the 1966 agreement and the 1968 addendum. He urged the trial court to set off these overpayments against his arrearages. The trial court refused. We hold that the trial court was correct in its ruling.

*Martin v. Martin,* 59 Wn.2d 468, 368 P.2d 170 (1962), stated that overpayments of child support may be set off for equitable reasons against arrearages. However, the court left the matter to be decided on a case–by–case basis. In *Martin* itself, the court held that setoff was not required where a father gave his son additional monies for college education. The court determined from the record that the father did not intend these payments to fulfill his support obligation, and that he knew they were in addition thereto. The *Martin* court went on to say, however, that if the father could have shown that the mother was relieved of certain living expenses for her son while he was away at college, then the father would have been entitled to an offset. This very situation occurred in *Mathews v. Mathews,* 1 Wn. App. 838, 466 P.2d 208 (1970), and the case was remanded for an offset.

We are convinced that the evidence here makes this case more like *Martin* than *Mathews.* The excess payments made by respondent were not in lieu of any other obligation to petitioner or the children, nor did they in any way reduce the living expenses petitioner was required to incur. In short, respondent's voluntary payments did not amount to double support and we see no reason to require a setoff.

The judgment of the trial court will be affirmed.

PETRIE and SOULE, JJ., concur.