[No. 29839. *En Banc.* August 29, 1946.]

HAZEL BERVIN DUNCAN, *Respondent*, v. JAMES B. W. DUNCAN, *Appellant*.[1]

[1]Reported in 172 P. (2d) 210.

844

*Burkheimer & Burkheimer* and *J. H. Buchanan,* for appellant.

*Simmons & McCann,* for respondent.

STEINERT, J.—This is an appeal from an order of the superior court for King county denying defendant's petition to modify the provisions for alimony as contained in an interlocutory order of divorce entered seven years previously.

Appellant, James B. W. Duncan, and respondent, Hazel Bervin Duncan, were united in marriage on August 3, 1920. A child, Barbara Jean, was born to them in 1927.

On October 10, 1938, respondent instituted an action for divorce from appellant, on the grounds of cruelty and abandonment. Appellant defaulted in the action. Prior to the hearing of the cause, however, respondent and appellant on October 21, 1938, entered into a written agreement, denominated a "property settlement and agreement," in which the parties agreed that respondent was to have the care, custody, and control of the daughter, Barbara Jean, then eleven years of age, and that appellant should have the right to visit the child at reasonable times. Appellant further agreed therein to pay to the respondent "the sum of One Hundred ($100.00) Dollars per month each and every month hereafter as alimony until and unless she should remarry, at which time said payments are to stop," and to pay to the respondent the additional sum of twenty-five dollars a month for the support of the daughter until she should become of the age of twenty-one years. The written agreement also provided that respondent should have, as her sole and separate property, the home in which the parties had resided, subject to an outstanding mortgage, and the furniture therein, also a Nash sedan and an insurance policy on her life; and that appellant should have, as

his sole and separate property, a half-section of land in the eastern part of this state, a designated amount of capital stock of the Bemis Brothers Bag Company, by whom appellant was then employed, and certain mining stock. In the agreement was a provision wherein the respondent wife agreed "not to bring any separate action for damages other than this divorce action, involving the defendant [appellant] in, or could be based upon any charges arising out of this suit."

At the hearing on November 16, 1938, the trial court made and entered findings of fact and conclusions of law establishing the grounds of divorce as alleged in respondent's complaint, also reciting the written agreement *in haec verba,* and specifically approving the terms thereof. On the same day, an interlocutory order of divorce was entered, which also recited and approved the terms of the written agreement.

At the time of the entry of the interlocutory order, appellant was earning a salary of $315 a month. About three years prior to the divorce, respondent had taken a course in library training, but, so far as the record discloses, had no actual employment until September, 1938, which was about a month prior to the commencement of the divorce action.

A final decree of divorce, approving all of the provisions of the interlocutory order, was entered May 17, 1939. From the time of the execution of the written agreement between the parties, appellant has regularly paid to the respondent the alimony and support money as called for both in the agreement and in the interlocutory order, and at the time involved herein he was not in default of any required payment.

In the meantime, from about March, 1939, until July 1, 1945, respondent was employed as a librarian by the Kitsap county rural library district at a salary which averaged about $150 a month. In the spring of 1945, she "audited" a library course in the University of Washington, and on July 1st of that year her salary as librarian was increased to $245 a month. She has never remarried.

In the month of May, 1942, appellant married his second wife and has been living with her since that time. On May 30, 1945, the daughter, Barbara Jean, then eighteen years of age, married and since then has been living with her husband.

Up to this point, we have presented the situation existing between the parties at the time the present proceeding was instituted by the appellant on July 13, 1945. He was then forty-six years of age and respondent was forty-five.

On the date last mentioned, appellant filed a petition seeking a modification of the interlocutory order of divorce entered November 16, 1938. In his petition, he recited briefly the factual situation narrated above, and then alleged that respondent was a trained and skilled librarian, able-bodied, and capable of earning in excess of two hundred dollars a month; that he himself was in frail health; that it was with difficulty that he was able to pursue his occupation as office man and salesman; that he had very little income "other than his salary of about four hundred dollars per month"; and that because of such changed conditions and status of the parties he believed that the interlocutory order and final decree should be modified by eliminating therefrom the provisions relative to the payment of alimony to the respondent and support money for the daughter. Respondent joined issue upon the petition, and the cause came on for hearing by the court upon the oral testimony of the parties.

Appellant testified that ever since September, 1938, which was prior to the commencement of the divorce action, he had been "more or less, off and on, under a doctor's care," due to a neurotic condition, caused by thirty-one years of hard work; that during the intervening period he had lost weight to the extent of about thirty-three pounds and presently weighed only about one hundred sixty-six pounds; that in the previous year a major operation had been performed upon his wife and that her health was still poor; and that his doctor's bills for himself and for his present wife during the year 1944 amounted to approximately eleven hundred dollars. However, he also testified that he was

still employed by his original firm of employers; that his salary was $450 a month; that his bonus from the same firm during the preceding year amounted to one hundred dollars a month, although he did not expect to receive any bonus during the year 1945; and that his stock dividends amounted to $280 a year.

Respondent did not testify in her own behalf, but, upon cross-examination by appellant's counsel, she admitted that, since the date of the divorce, her salary had averaged about $150 a month, and that, beginning July 1, 1945, just before the hearing in court, it had been increased to $245 a month.

At the conclusion of the hearing, the trial court rendered an oral decision indicating that the interlocutory order and final decree would be modified to the extent of eliminating therefrom the provision of twenty-five dollars for the support of the daughter, who since had married, but not to the extent of eliminating the provision of one hundred dollars monthly alimony to the respondent. On a motion for new trial filed by the appellant, the court heard argument and thereafter rendered a memorandum decision, followed by findings, conclusions, and order in conformity with the original decision. This appeal is directed to the refusal of the trial court to modify the decree of divorce by eliminating therefrom the provision with reference to the further payment of alimony to the respondent.

As grounds for its decision, the trial court gave two alternative reasons: (1) that, under the law applicable to the facts of the case, the decree relative to the monthly payments for the benefit of the respondent was not subject to modification and that the court therefore had no power to modify it in that respect; and (2) that, in any event, the evidence did not warrant a modification.

In reaching the conclusion at which we have arrived herein, we have necessarily had to decide three questions: (1) whether the provision for payment of one hundred dollars a month to the respondent constituted an allowance for *alimony*, or whether it was, in its nature, a partial property settlement; (2) whether, under the existing di-

vorce law, such a provision, if held to constitute alimony, may be subsequently modified; and (3) whether, in any event, under the evidence, a modification in that respect should have been granted. We shall consider these questions in their numerical order.

The written agreement of the parties, which was incorporated into the original findings of fact, was termed "Property Settlement and Agreement"; it covered matters relative to the custody of the minor child, the respective monthly amounts to be paid to the respondent for herself and for the support of the child, and the division of specifically named items of community property between the parties. If this was purely a property settlement, then, of course, it could not be subsequently modified.

Respondent argues that the particular provision was in fact part of a *property settlement,* not merely an allowance for alimony in a case where there was no tangible property to be divided; that the settlement was voluntarily entered into by the appellant and was explicitly confirmed by the court; that the monthly amount was part of a reward for eighteen years' faithful service as a wife; that by such contribution, together with what she could earn during her advancing years, she would be able to accumulate something for her old age; and that if such a settlement could thereafter be vacated or modified, at the instance of one of the parties thereto, then there would be no point or reason for the other party ever to enter into it.

There is considerable force in respondent's argument, although, if the provision had been intended by the parties to operate solely as part of a property settlement, and not as alimony, the agreement could easily have so provided. On the contrary, the agreement specifically denominated the one hundred dollar payments "as alimony" and the twenty-five dollar payments as support money for the minor child. More than that, the payments as alimony were to continue, not for a fixed and definite period of time, but only "until or unless she should remarry," which might have been at any time after the entry of the final decree of divorce. If those payments had been intended as allotments of property,

they would undoubtedly have been described in terms having some measurable value.

The situation in this case is the reverse of that in *State ex rel. Foster v. Superior Court,* 193 Wash. 99, 74 P. (2d) 479, wherein it was held that an interlocutory order which described and awarded to the wife certain specific properties but made no mention of alimony or support for the wife, constituted simply a property settlement, rather than a provision for alimony, and therefore could not be enforced by contempt proceedings. Accord: *Erickson v. Erickson,* 8 Wn. (2d) 255, 111 P. (2d) 757, 136 A. L. R. 685.

In view of the phraseology of the written agreement and of the interlocutory order in this case, and in further view of the terms of the statute hereinafter to be noted, we hold that the monthly payments of one hundred dollars constituted alimony, and not a division of property or the settlement of property rights.

The next · question is whether such provision for alimony is subject to modification by the court, when warranted by the particular facts of the case.

Chapter 112, Laws of 1933, p. 432, § 1 (Rem. Rev. Stat. (Sup.), § 988 [P.P.C. § 23-15]), which was in force at the time the interlocutory order was entered, provides that in divorce cases the court, after determining which of the parties is entitled to divorce, must enter an interlocutory order to that effect,

" . . . which order shall also make all necessary provisions as to *alimony,* costs, care, custody, support and education of children and custody, management and division of property, which order *as to alimony* and the care, support and education of children *may be modified, altered and revised by the court from time to time as circumstances may require.*" (Italics ours.)

The interlocutory order in this case was entered pursuant to those requirements.

Prior to the enactment of that statute, it was settled law in this state that the court had no power to alter or modify a decree to meet changed conditions in a case where the decree grants an absolute divorce and permanent alimony,

though payable in fixed installments, and there are no minor children to be cared for, and the decree contains no reservation of jurisdiction, and there is no *statute* conferring the power to modify after the time for appeal has expired, and the time limited by statute within which such decree may be modified has expired, and the decree is not attacked upon the ground of fraud or mistake. *Ruge v. Ruge,* 97 Wash. 51, 165 Pac. 1063, L. R. A. 1917F, 721; *Cooper v. Cooper,* 146 Wash. 612, 264 Pac. 1; *Rehberger v. Rehberger,* 153 Wash. 591, 280 Pac. 8; *Hart v. Hart,* 174 Wash. 316, 24 P. (2d) 620; *Blethen v. Blethen,* 177 Wash. 431, 32 P. (2d) 543; *Fisch v. Marler,* 1 Wn. (2d) 698, 97 P. (2d) 147; *Stafford v. Stafford,* 18 Wn. (2d) 775, 140 P. (2d) 545. Accord: *Troyer v. Troyer,* 177 Wash. 88, 30 P. (2d) 963.

As stated in the *Blethen* case, *supra,* the theory of those cases was that an order or decree awarding alimony constituted property vesting in the person to whom it was awarded, and that neither a court nor the legislature could take away such property after it had become vested. It is to be kept in mind, however, that in all of the cited cases the interlocutory orders had been entered before the act of 1933, from which we have quoted above, came into effect. Under the law existing at those times, the award of alimony constituted property which had become vested in the person to whom it was allowed.

In passing, it may be noted that in some of the cases above cited, as well as in some earlier decisions, this court made a distinction between a situation where awards for alimony and support money for a minor were segregated, and one where they were unsegregated, holding that, where they were segregated or capable of being segregated, the award for alimony could not be modified, but, where they were unsegregated, modification could be made. That distinction or principle, however, does not affect this case, because, even though the amounts here were segregated, the 1933 statute is controlling.

Since the enactment of that statute, we have uniformly held or recognized that the court has power to modify, alter, or revise orders and decrees relative to alimony. *Murphy*

*v. Shelton,* 183 Wash. 180, 48 P. (2d) 247; *State ex rel. Ranken v. Superior Court,* 6 Wn. (2d) 90, 106 P. (2d) 1082; *von Herberg v. von Herberg,* 6 Wn. (2d) 100, 106 P. (2d) 737. See, also, *Campbell v. Campbell,* 19 Wn. (2d) 410, 143 P. (2d) 534, and *Goade v. Goade,* 20 Wn. (2d) 19, 145 P. (2d) 886.

In the *Murphy* case, *supra,* we stated:

"Our statute, Rem. Rev. Stat., § 988 [P.C. § 7507], relative to divorces, not only gives the court the power, but also enjoins upon it the duty, to make all necessary provisions for alimony, support and education of the children, and management and division of the property. By chapter 112, Laws of 1933, p. 432, § 988 was so amended *as to give the court the power to modify, alter or revise all orders and judgments relative to alimony and support, from time to time as circumstances may require.*" (Italics ours.)

Under the authority of the recent statute and the cases decided since its enactment, we hold that the trial court had the power to modify the alimony provision.

This brings us to the final question, whether, having the power to modify the provision for alimony, the court should have done so in this instance. The trial court, after hearing all the evidence, concluded that the change of relative conditions between the parties was not sufficient to warrant a modification.

The question whether there has been a material change in the conditions and circumstances of parties to a divorce action, arising subsequent to the entry of an order fixing and allowing alimony, and the question of the propriety and extent of a modification of such order are questions which are addressed to, and rest within, the sound discretion of the court hearing the cause. *Bartow v. Bartow,* 170 Wash. 409, 16 P. (2d) 614; *Hudson v. Hudson,* 8 Wn. (2d) 114, 111 P. (2d) 573; *Bartow v. Bartow,* 12 Wn. (2d) 408, 121 P. (2d) 962; *Dillon v. Dillon,* 21 Wn. (2d) 311, 150 P. (2d) 594.

Unless it can be said that the trial court has abused its discretion, its exercise thereof will not be disturbed. *Dillon v. Dillon, supra.*

852

■ The criterion for the allowance of alimony depends on two factors: (1) the necessities of the wife, and (2) the financial ability of the husband. *Bartow v. Bartow,* 12 Wn. (2d) 408, 121 P. (2d) 962, and cases therein cited; *Luithle v. Luithle,* 23 Wn. (2d) 494, 161 P. (2d) 152.

■ In the case at bar, it is true that appellant has thus far faithfully performed the terms of his agreement and the confirmatory order of the court. For that he is to be commended, although he has only done that which he voluntarily agreed to do. It is also true that, since the divorce, respondent has trained herself to earn a livelihood, and that quite recently her salary has been materially increased. It is evident from the record, however, that the parties contemplated that very prospect at the time the appellant obligated himself under the agreement to pay her one hundred dollars a month "until or unless she should remarry." The trial court may well have concluded that it was yet too soon to determine whether the increase of salary, which had been in effect for only a month or two, was permanent, or whether even the tenure of her position was lasting. At any rate, respondent is growing older, she is alone, and her chances of remarrying to advantage are becoming less. Be all that as it may, and conceding that her necessities are at present less than they previously were, the fact remains that appellant still retains the position with the firm by which he was formerly employed, and that his income is greater now than it was at the time of the divorce. Added to this is the fact that the interlocutory order was by the court modified to the extent of eliminating the monthly payment of twenty-five dollars for the support of the daughter.

The trial court not only heard the evidence but observed the physical condition of the parties. While the court might have been justified in making some reduction in the amount of alimony, we cannot say that it abused its discretion in refusing to do so.

The order of the court will be affirmed.

BEALS, C. J., ROBINSON, and JEFFERS, JJ., concur.

MILLARD, J. (concurring in the result)—I concur in the result. When decree for alimony is entered, there can be no modification.

SIMPSON, J. (concurring in the result)—I am in accord with the conclusion reached by the majority. Appellant argues that the case of *Lockhart v. Lockhart*, 145 Wash. 210, 259 Pac. 385, is in point and governs the decision in the case at bar. There is merit in his contention if the *Lockhart* case is allowed to remain as a part of the law of this state.

In that case, this court held that payment of alimony would not be continued where it had been paid in the large amount of nine thousand one hundred dollars, over a long period of years. Here, appellant has paid alimony for a considerable time in the amount of eight thousand dollars.

The rule announced in the *Lockhart* case has never been followed and was distinguished and criticized in *Bartow v. Bartow*, 12 Wn. (2d) 408, 121 P. (2d) 962. It is not in accord with the settled law in this state, which is to the effect that payments of alimony will not be changed except in those cases in which the conditions are substantially different than at the time of the entry of the decree of divorce.

In the interests of uniformity of decision, the *Lockhart* case should be overruled.

BLAKE, J., concurs with SIMPSON, J.

CONNELLY, J. (dissenting)—I dissent. I think the majority opinion states every reason for granting relief to the appellant. There is no need to review the evidence. That has already been done. A healthy woman earning two hundred forty-five dollars a month, in my opinion, has no right to permanently draw one hundred dollars per month from the four hundred fifty dollars monthly earnings of her former husband. Her salary amply meets her needs and enables her to save money for her old age. I think common equity demands that the one hundred dollars per month alimony be eliminated. These people had been separated for over eight years before this action to modify the decree was commenced. The wife has absolutely no claim upon the husband or his earnings.

I am not concerned with whether the trial judge may be said to have abused his discretion or merely committed error. I think his failure to grant the husband relief was wrong and inequitable and for these reasons dissent.

MALLERY, J., concurs with CONNELLY, J.

---

October 8, 1946. Petition for rehearing denied.

[1]Reported in 172 P. (2d) 289.