[No. 339-1.    Division One—Panel 2.    August 16, 1971.]

SHERMAN A. SUTLIFF, *as Executor, Respondent,* v. HOWARD T. HARSTAD, *Appellant.*

540

*Carl A. Jonson,* for appellant.

*Short, Cressman & Cable, Joan E. Hansen,* and *Kenneth P. Short,* for respondent.

SWANSON, J.—When his ex-wife died, Howard T. Harstad stopped paying alimony. The executor of her estate brought suit to enforce payment of the balance still due of the divorce decree's initial award of alimony to the wife. The trial court concluded that the monthly payments described as alimony in the divorce decree constituted a division of property so that the obligation survived the death of Mrs. Harstad. Her estate was awarded a $9,834 judgment. Howard T. Harstad appeals.

On December 18, 1962, Howard T. Harstad and Harriet S. Harstad each were awarded a decree of divorce from the other. The trial court made a complete disposition of property, debts, custody of children, and awarded alimony to the wife of $565 per month for a period of 82 consecutive months, as the decree recites, "to assist in getting defendant trained, experienced and able to earn her own living, and to aid in maintaining a proper home for said daughter Susan." Finding 2. For over 4 years, Howard Harstad paid his former wife the alimony required by the decree. On March 7, 1967, Harriet Harstad died, with 32 months remaining on the alimony obligation. Mr. Harstad ceased making payments, believing that the alimony obligation terminated upon the death of his former wife. Her executor brought suit to collect the balance owing on the theory that the alimony award was actually not alimony but a division of property and, thus, a continuing obligation. The trial court found the language describing the award of $565 per month for 82 months to be ambiguous and permitted the introduction of parol evidence. Witnesses, principally the parties' accountant, were permitted to testify regarding

the negotiations between the parties and their advisors, in order to ascertain the circumstances and the intent of the parties. It was shown that the parties had entered into a property settlement agreement prior to the entry of the decree of divorce, and the provisions of this agreement were included almost verbatim within the divorce decree, even though no reference is found in the decree to the property settlement agreement itself, nor was the property settlement agreement offered as an exhibit in the divorce proceedings. The pertinent provisions of the decree relative to alimony ar as follows:

> IT IS FURTHER ADJUDGED that defendant needs alimony to aid in re-establishing her earning ability and in providing a suitable home and care for the daughter, Susan, and that Plaintiff shall pay to defendant the sum of Nine Hundred Seventy ($970) Dollars on the 11th day of December, 1962, and the sum of Five Hundred Sixty-Five ($565) Dollars on or before the 10th day of each and every month thereafter for a period totaling eighty-two (82) months of such payments of Five Hundred Sixty-Five ($565) Dollars. Such alimony shall not be subject to modification, and shall continue as a claim against the plaintiff's estate in the event of his death prior to full payment of said alimony payments, and plaintiff shall make provision for the payments of said alimony payments in any testamentary disposition of his property pending such full payment.

Finding 2. The trial court concluded that the term "alimony" was used merely to secure a tax benefit for Howard Harstad and was, in reality, only a part of the division of property between the parties. The trial judge found that the award of 82 monthly payments, and the initial payment of $970 provided for in the decree, were made up of these elements: (1) distribution of $19,975 of community property to Mrs. Harstad to equalize the division of community property between the parties; (2) $2,600 to aid Mrs. Harstad's education and rehabilitation in obtaining a librarian's job; (3) payments for the support o fthe daughter Susan, totaling $12,600, at the rate of $150 per month; (4) interest on the $19,975, amounting to $4,525; (5) additional income

tax liability to Mrs. Harstad, totaling $7,601, for reporting periodic alimony payments. The judgment of $9,834 awarded to Mrs. Harstad's estate represents the balance of the 32 monthly payments still due, after deducting the amount allocated for support of the daughter Susan and the balance of projected future tax liability.

In his first two assignments of error appellant Harstad claims the trial court incorrectly determined the divorce decree to be ambiguous with respect to the use of the term "alimony" and erred in admitting parol evidence of the parties' negotiations prior to settlement resulting in findings of fact based on such parol evidence. If the decree is clear on its face and no ambiguity exists, parol evidence is not admissible to explain its language. *Boeing Airplane Co. v. Firemen's Fund Indem. Co.*, 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R. 984 (1954); *Messersmith v. Messersmith*, 68 Wn.2d 735, 415 P.2d 82 (1966). Bouvier's Law Dictionary 186 (8th ed. 1914) defines "ambiguity" as "[d]uplicity, indistinctness or uncertainty of meaning of an expression used in a written instrument." Our reading of the divorce decree reveals neither double meaning nor uncertainty. The trial court, in the divorce action, in clear and specific language awarded alimony to Mrs. Harstad limited to 82 months of anticipated need. However, the respondent executor asserts that the language of the decree is ambiguous because its description of the monthly payments forbids both their modification and the termination of the payments on Mr. Harstad's death. Respondent goes on to say that the provision for 82 monthly payments has most of the indicia of a property settlement. Consequently the court was compelled to look behind the alimony label to the circumstances and intent of the parties in order to determine whether the payments constituted alimony or a division of property. We do not agree. Just because the payments were to survive the husband's death does not transform what is termed alimony into a division of property. As long as the court unmistakably indicates that the payments were to continue, as the court did here, alimony payments

can survive the death of the husband. *Murphy v. Shelton,* 183 Wash. 180, 48 P.2d 247 (1935). Respondent then points to the restriction in the decree against modification of the alimony award as being contrary to the statutory law concerning alimony, and claims this renders the decree ambiguous. Such a restriction is indeed contrary to RCW 26.08.110. But it had no legal significance at the time of the decree, nor does it now. Even the provision that the payments were to continue for a specified period of 82 months, rather than an indefinite period of time, does not change what is termed alimony into a property division, for it is apparent that the trial court in the divorce action intended that the wife receive a specific amount, even though it was payable over a period of 82 months. Alimony may be awarded in one payment or in periodic payments. See *Fleckenstein v. Fleckenstein,* 59 Wn.2d 131, 366 P.2d 688 (1961); *Platts v. Platts,* 45 Wn.2d 853, 278 P.2d 679 (1954); *Valaer v. Valaer,* 45 Wn.2d 565, 277 P.2d 326 (1954); and *Christenson v. Christenson,* 141 Wash. 226, 251 P. 111 (1926).

Contrary to respondent's argument, the alimony provisions are consistent with the accepted definition of alimony.

There are many definitions of "alimony" to be found in the decisions of the courts, and while they differ more or less as to details they all agree that primarily alimony is an allowance in a divorce action to the wife from the husband for her support, in lieu of the legal obligation of the husband to support her. [Citation omitted.]

Generally, alimony has several distinct characteristics. It must have as its purpose the support and maintenance of the wife, although the term is frequently used to include the support of the children when their custody has been awarded to the wife. Usually, it is an allowance of periodical payments, but it may be in the form of a lump sum. Normally, alimony ceases upon the death of either of the parties. It is usually provided for by an order of the court incorporated in a decree of divorce. It is generally in the form of money, and payment of a specific sum is required.

However, it appears that no one of these characteristics

is conclusive in distinguishing alimony payments from property settlement payments.

*Valaer*, 45 Wn.2d at 570.

In comparing the provisions of the alimony award to Mrs. Howard Harstad with the above definition, we find these distinguishing features of alimony present in the case at bar: (1) The divorce decree recites that the expressed and declared purpose of the award is for the support of the wife; (2) It is an allowance of periodic payments; (3) It is provided for in the court decree, and the decree does not simply refer to the settlement agreement of the parties; (4) It is in th form of money, and a specified sum is stated.

Neither the decree nor the findings of fact and conclusions of law contain any indication that the award was anything but alimony. The parties represented to the court that their settlement agreement provided that the wife needed alimony to aid in reestablishing her earning ability and to provide a suitable home and care for the daughter. The parties agreed, and the trial court found as a fact that the

> [d]efendant has suffered some back disorder which has caused pain and which limits her strength and ability to perform household duties and defendant will require alimony to aid in maintenance of the home for herself and daughter.

Finding 2. In addition the trial judge in the original divorce proceeding found alimony was necessary to

> assist in getting defendant trained, experienced and able to earn her own living, and to aid in maintaining a proper home for said daughter Susan.

Finding 2. These recitals from the findings make it plain to us that the trial court intended these periodic payments to be alimony. It is of no consequence that the parties may have, in concert with their accountants and advisors, secretly contrived to divide a portion of the community property by labeling it alimony in order to secure a tax advantage. What is significant is that representations were made to the court that alimony was necessary for the benefit of

the defendant wife and that the plaintiff husband agreed and was willing to pay $565 per month. To permit parol evidence of the negotiations engaged in by the parties and their advisors to show an intention contrary to that expressed in their agreement and represented t othe court is to lend approval to a dangerous and questionable practice.[1] As the preamble to the judgment recites in substance, the trial court, after hearing testimony on behalf of both parties and the statements of counsel, determined in its discretion that the defendant wife was in need of alimony amounting to $565 a month for 82 months.

However, the allowance of these alimony payments was dependent on the necessities of the wife as well as the financial ability of the husband to pay. *Duncan v. Duncan*, 25 Wn.2d 843, 172 P.2d 210 (1946). As the decree makes clear, the alimony payments were to allow Mrs. Harstad to prepare to support herself and to maintain a home for their daughter. Because the need of the wife for support ends at her death, the obligation of the husband to pay alimony also terminates.[2] 24 Am. Jur. 2d *Divorce and Separation* § 644 (1966). Thus, upon the death of Mrs. Harstad, Mr. Harstad's duty to make alimony payments of $565 each per month ceased.[3]

The judgment is reversed and the action dismissed.

HOROWITZ, C.J., and FARRIS, A.C.J., concur.

[1] The attorneys in the present case are not the same as the attorneys in the divorce case.

[2] In *Scudder v. Scudder*, 55 Wn.2d 454, 457, 348 P.2d 225 (1960), the court noted that the death of the husband was a material change of circumstances, and thus the alimony payments could b emodified. The death of the wife reduces her needs just as the death of the husband reduces his financial ability to make payments. But in the case of the wife, her needs are extinguished, whereas the husband's estate may still be able to continue some support and may be required to do so if it was clearly so provided in the decree. Therefore, even if alimony payments did not cease automatically upon the wife's death, no better showing of lack of need could be made than the death of the wife.

It is not disputed by either party that the payments of alimony terminate upon the death of Mrs. Harstad.

[3] The cessation of these alimony payments does not affect any duty that Mr. Harstad may continue to have to support his daughter.