[No. 967-41728-1.   Division One—Panel 1.   November 15, 1971.]

FRANCES E. BAUER, *Respondent*, v. HUBERT K. BAUER, *Appellant*.

*Schweppe, Doolittle, Krug & Tausend, Warren A. Doolittle,* and *David G. Knibb,* for appellant.

*Lycette, Diamond & Sylvester* and *Earle W. Zinn,* for respondent.

HOROWITZ, C.J.—This is an appeal from an order denying petitioner husband's petition to modify a so-called child support trust ordered to be created under an agreed divorce decree.

The Bauers were married in 1947. Three children were born to them: Kristine, Peter, and Liesa. In 1965, 18 years later, the parties were divorced. At that time Kristine was 16, Peter 13, and Liesa 10. The divorce decree entered by the court was a decree supported by findings and conclusions, all of which were agreed to after extensive negotiations by the spouses through competent counsel representing them. The decree distributed the property of the parties to each and made special provision for the creation of a trust for the benefit of the children in the following language:

It is ordered and directed that 1,000 shares of the capital stock of Modern Homes Investment, Inc. shall be deposited with the National Bank of Commerce of Seattle under the provisions of the Trust Agreement, copy of which is attached to the Findings of Fact hereof and marked Exhibit B to said Findings of Fact and which by this reference is incorporated in this Decree as so fully set forth. The said shares of stock and the proceeds

thereof to be held, kept and disbursed and used for the benefit of the said minor children under the provisions of said Trust Agreement and not otherwise and the plaintiff and defendant are ordered and required to deposit said shares and to enter into said Agreement. By reason of the provision hereby made for the care, support, maintenance and education of said minor children and of each of them, the defendant is relieved of any further responsibility for such care, support, maintenance and education subject only to modification hereafter in case of necessity as provided by law.

The trust instrument which is referred to names the trustee; provides for segregation of trust assets for each child with management of each child's share as a separate trust; provides for discretionary distributions of income and principal to each child for his or her care, support, health and/or education during minority; provides that when each child respectively reaches 21 years of age, mandatory distribution of all trust income from that child's trust must be made. When each child respectively reaches 25 years of age, the remainder of all principal and income of that child's trust is to be distributed to that child or his or her heirs, but not including petitioner.

Shortly after the entry of the decree, the National Bank of Commerce of Seattle took possession of the 1,000 shares of capital stock of Modern Homes Investment, Inc. and proceeded to administer the trust. The husband took the benefits of the decree and at no time was called upon to contribute anything further to the care, support, maintenance and education of any of the minor children.

In July 1966, a year and 3 months after the divorce, Modern Home Builders, Inc., in which Modern Home Investment, Inc. had substantial holdings, was sold on contract for $8.5 million, with a downpayment in excess of $2 million, interest payments for 2 years and principal payments thereafter. Modern Home Investment, Inc. was liquidated. The 1,000 shares in the trust jumped in value from what the husband had estimated was $40,000 ($40 per share) to $202,000 ($202 per share). Accordingly, each

child's share of the contracted purchase price was not $13,333, but $67,333. The husband immediately sought legal advice regarding modification of the trust, but was told by his then attorney that the trust was irrevocable.

In May 1970, the husband filed a petition for modification of child support. He sought, with respect to Peter and Kristine, that the trust be revoked and the trust assets returned to him. He asked in Liesa's case that the trust be modified in order that trust assets be used only for her educational needs before majority or emancipation, and that the trust terminate and the trust assets be returned to him when the latter purposes had been served. Grounds for modification listed in the petition were the fact that the respondent's financial condition had improved quite substantially while his own ability to pay support remained relatively static, the corresponding absence of the children's need for support by their father, the contention that the support trust was void insofar as it made distribution of the father's estate to the children or provided support after they reached majority or first became emancipated, failure of the trust to achieve its purposes, and the doctrine of resulting trusts. At trial the petitioner also proceeded on the theory that the trust corpus had increased dramatically beyond what he had intended to provide for support.

The facts are not in dispute. Thus, Kristine at the time of the petition was 21 years of age, had been married and then divorced, and she, not working, together with her 3-year-old son, was living with her mother. Peter, 18, was married, employed part time, and was living with his wife. Liesa, 15, was attending public school and living with her mother. Petitioner and his former wife had both remarried, and the wife's second husband had died the preceding year. There was evidence that by reason of the financial help given by the mother, the assets of the trust established following the decree of divorce had been sparingly used. Of the $67,000 in each child's trust following the 1966 stock sale, receivables in each account still approximate $45,000 with additional cash in the three accounts varying from nearly $8,000 to

$10,000. The petitioner testified that the attitude of the two oldest children is to forego education expenses in favor of preserving trust assets for distribution at age 25. He also testified that in his opinion a reasonable amount for educational expenses of Liesa before she reaches her majority would be $10,000. In addition to the trust assets, the petitioner was given additional shares of Modern Homes Investment, Inc. stock as custodian for the parties' children. Proceeds from the stock were placed in separate savings accounts which petitioner still holds for the benefit of the two youngest children, having already disbursed Kristine's account to her. A portion of these funds was invested by the petitioner in real property on behalf of the children. The accounts of Peter and Liesa, inclusive of the property investment, are valued at approximately $30,000 and $15,000, respectively, and will be turned over to them at age 21. There was also evidence that the use of the funds by the children may have had something to do with neglect by the children of their educational opportunities.

The wife, whose mother had died prior to the divorce decree and from whom an inheritance of approximately $350,000 was expected, in fact inherited a total of over $1,300,000 by reason of the sale of Modern Homes Investment, Inc. The property awarded to the wife in the divorce decree had increased very substantially. The petitioner's income, derived from his Boeing salary, had increased from $17,700 to $22,000 annual gross, and his net worth had decreased by $6,000 or $7,000, his net worth at the time of the modification proceedings being approximately $41,000.

The trial court denied the petitioner any relief. Petitioner on appeal does not except to any of the findings of the trial court, but contends that the trial court erred in concluding that the trust agreement was not subject to modification or revocation and that the petition for modification should be denied. He also complains the court erred in refusing to enter certain proposed findings and in entering its order appointing the guardian ad litem for the children.

The controlling question presented or necessarily involved dispositive of all assignments of error, including petitioner's proposed findings, involves the construction of the divorce decree, vis-a-vis the trust. Proper construction requires that we choose the legal principles that must control and, in so doing, reconcile if we can, competing considerations urged by the respective parties in support of their respective positions. Thus, petitioner husband attacks the decree below contending that the trust provisions for support, maintenance and education are subject to modification and termination because of subsequent change of circumstances and failure of the trust to achieve its purposes; that the trust provisions providing for payment and distribution after each child respectively attains the age of 21 are invalid as beyond the power of the court, notwithstanding that petitioner consented thereto; that there is no longer any obligation to make payments to the older two children, the eldest being over 21 and the younger, who is married and living apart from his mother, being emancipated; that with respect to the youngest child, her educational needs during minority can be met by setting aside for her benefit the sum of $10,000; and finally, that petitioner is entitled to a return of the remaining trust assets under the principle that upon termination of a trust, a resulting trust arises in favor of the settlor. In support of the last contention he relies on general statements contained in Bogert, Trusts & Trustees § 468 *et seq.* (2d ed. 1964, Supp. 1971), and Scott, The Law of Trusts § 411 *et seq.* (2d ed. 1956). Respondent wife, individually and as guardian ad litem for the children, supports the decree below by contending that the divorce decree was a negotiated one entered after a hearing by the divorce court as a non-contested case on agreed findings, conclusions and decree; that the negotiated divorce decree included a property distribution in the nature of a gift for the benefit of the children and provision for support, maintenance and education payments modifiable only if the trust assets should prove insufficient during minority for that purpose. She further contends that peti-

tioner is estopped in this proceeding from attacking the validity of the trust.

We uphold the decree below from which this appeal is taken.

A claim of error by a nonconsenting party to a divorce decree, based either on the erroneous exercise of divorce court jurisdiction or the exercise of a nonexistent divorce court jurisdiction, may be asserted on direct appeal from the divorce decree. On such a direct appeal, an appellate court would or might be required to determine whether the divorce court erred by acting in excess of jurisdiction, or acted erroneously within its jurisdiction in making provision for children of the divorced spouses after they reach the age of 21 or become emancipated prior thereto, and to determine also whether the divorce court erroneously used the trust device to take property from the father and distribute it to the children. *See Sutherland v. Sutherland,* 77 Wn.2d 6, 459 P.2d 397 (1969). Furthermore, on such an appeal the appellate court might be called upon to resolve the question whether the trust provisions made were made by agreement and, if so, whether such agreed provisions are enforceable as within the principles discussed in *Scudder v. Scudder,* 55 Wn.2d 454, 348 P.2d 225 (1960); *Stone v. Bayley,* 75 Wash. 184, 134 P. 820 (1913); *Hayn v. Hayn,* 162 Kan. 189, 175 P.2d 127, 132 (1946); *see also,* 2A W. Nelson, Divorce and Annulment § 17.03 (2d ed. 1961, Supp. 1968), even though but for such consent such trust provisions would not be valid (*Emery v. Emery,* 104 Kan. 679, 180 P. 451 (1919), distinguished in *Hayn v. Hayn, supra*); or whether it is a decree subject to modification within the principles discussed in *Gorvin v. Stegmann,* 74 Wn.2d 177, 443 P.2d 821 (1968); *Millheisler v. Millheisler,* 43 Wn.2d 282, 261 P.2d 69 (1953); *Rentel v. Rentel,* 39 Wn.2d 729, 238 P.2d 389 (1951); Annot., 166 A.L.R. 675 (1947).

■ ■ The instant case does not involve a divorce decree heretofore appealed from, nor a direct appeal from such a decree because it was one "heard by the court as a non-contested case and on agreed findings of fact and con-

clusions of law and decree of divorce." Finding 7. The divorce decree is, therefore, a final decree and we must ascertain the nature of the relief awarded by it based upon agreed findings and conclusions as actually entered. *See Sutliff v. Harstad,* 5 Wn. App. 539, 488 P.2d 288 (1971); *Callan v. Callan,* 2 Wn. App. 446, 448-49, 468 P.2d 456 (1970). The fact of petitioner's agreement is of controlling significance on the issue of the validity of the property aspect of the trust provisions for the children subsequent to attaining the age of 21. The petitioner had a right to do more for his children than the law required of him, whether or not the agreement was part of a negotiated over-all property settlement agreement occasioned by and incident to the divorce. It is not for us to frustrate a father's well-intentioned generosity for his children. In *Hayn v. Hayn, supra,* involving a direct appeal from a divorce decree, the court said:

> Appellant argues the assignment of the policies created an estate for the minor child out of the father's property and thus provided support for the child which might continue beyond the minority of the child. It is contended the creation of such an estate is invalid, citing *Emery v. Emery,* 104 Kan. 679, 180 Pac. 451. That decision, when applicable, is sound. Here, however, an estate for the child is not created out of the father's property against his will. The father has consented to the irrevocable assignment of the policies and has agreed to continue to pay the premiums thereon for the benefit and protection of his child.

162 Kan. at 196. The doctrine of *Hayn v. Hayn, supra,* finds support in the Washington cases of *Scudder v. Scudder, supra,* and *Stone v. Bayley, supra.*

Petitioner, in related assignments of error, contends that the trial court erred in refusing to enter certain of petitioner's proposed findings of fact set out in the margin.[1] We

---

[1]"If Hubert Bauer, petitioner-defendant, was paying child support directly, rather than through the trust, he would now be entitled to a termination of his payments on behalf of Kristine, on the grounds that she has now obtained her majority and is no longer entitled to support.

hold that the trial court committed no prejudicial error in refusing to enter petitioner's proposed findings. Their entry would not have entitled him to the relief he seeks.

■ In the usual case of a father who seeks to modify or terminate support and education payments, it is relevant for the court to consider the father's continued ability to pay, the relative permanence of the change of circumstances, and the welfare of the children affected. In the instant case, there is no change in the father's ability to pay. He is not being asked to pay any more. The trust is adequate for that purpose. With respect to the welfare of the children, it can scarcely be said to be in Liesa's interest to substitute for the present trust-secured obligation for support, maintenance and education, the unsecured obligation or promise of the petitioner to make payments for her support, or the proposed partially secured obligation of

---

"If Hubert Bauer, petitioner-defendant, was paying child support directly, rather than through the trust, he would now be entitled to a termination of his payments on behalf of Peter, on the grounds that he is emancipated by his marriage and removal from the home of his custodial parent, and is no longer entitled to support.

"If Hubert Bauer, petitioner-defendant, was paying child support directly, rather than through the trust, he would now be entitled to a modification of his payments on behalf of Liesa, on the grounds that the financial circumstances of the parties and of Liesa have changed to the extent that she no longer needs his support except for educational purposes during her minority and before her emancipation, which ever occurs earlier.

"A reasonable amount for the educational expenses of Liesa between now and her age of 21 years is $10,000.00.

"The change in financial circumstances which would justify the modification of Liesa's support are:

"(a) an increase in the value of plaintiff-respondent's stock ownerships from $400,000 at the time of divorce to $1,316,056.58 at the time of this hearing;

"(b) a decrease in the net worth of defendant-petitioner from $48,600 at the time of divorce to $41,045 at the time of this hearing, despite an increase in his salary during the same period from $17,600 to $22,100 per annum;

"(c) an increase in the value of Liesa's custodian account from $3,000 at the time of the divorce to approximately $15,000 at the time of this hearing."

(Petitioner's proposed findings 13 through 17.)

petitioner for Liesa's education, should it become necessary to perform the same. With respect to the value of the stock, it remains to be seen whether the purchase price installments of the stock sale which give increased value to the stock in the trust will be paid. Nor is it certain that in the remaining years of her minority her mother's financial generosity will continue. Furthermore, it is at least debatable whether the increased value of the stock is a change of circumstance not "within the contemplation of the parties at the entry of the [divorce] decree." *Crosetto v. Crosetto,* 65 Wn.2d 366, 367, 397 P.2d 418 (1964). The agreed-to trust did not key the trust benefit provisions to the value of the stock. Apparently there was no testimony before the divorce court concerning the then value of the 1,000 shares to be placed in trust, and there were no findings thereon in the agreed findings submitted to the court for approval. *See Sutliff v. Harstad, supra.* The divorce court may well have believed that it was sufficient to know the dividend income from the stock in the agreed trust as shown by the agreed findings, and that the retention of the responsibility of the father for care, support, maintenance and education "in case of necessity as provided by law," in addition to the trust itself, was a sufficient protection for the children's welfare. Furthermore, the divorce court may well have believed that the petitioner, either through himself or through his counsel, whom the court below expressly found to be competent, knew that the price of stock fluctuates upward and downward, and that the petitioner had or could have availed himself of information that would have apprised him of the true or potential value of the stock if that was a matter of importance to the petitioner. The agreed decree, based on agreed findings and conclusions, may well have led the court to accept the principle stated in *Millheisler v. Millheisler,* 43 Wn.2d 282, 288, 261 P.2d 69 (1953), wherein the court said in enforcing a property settlement agreement approved by the trial court "it is his contract and the court should not make another one for him."

In the instant case the proposed findings are hypothetical and subordinate, intended to be supportive of petitioner's basic position that he was entitled to have the trust property returned to him during the minority of Liesa because the provisions, vis-a-vis the children subsequent to their attaining the age of majority, were invalid. We have upheld the validity of these trust provisions and find nothing in the hypothetical findings that would change the conclusion we have reached. Furthermore, for all the record shows, Liesa may still need all the trust assets in her trust before she reaches her majority, and her welfare would not be promoted by taking from her the security for fulfillment of her financial needs. In any event, she is entitled to the benefit of any payments that would be withheld from her during minority should the trust assets prove excessive for her needs during minority. The rejection of petitioner's proposed findings was not prejudicially erroneous.

■ Even if it be assumed arguendo that the divorce decree is pro tanto void vis-a-vis the trust provisions for the children subsequent to their attaining the age of majority or earlier emancipation, it does not follow that petitioner is in a position to raise that question. In our opinion the doctrine of estoppel against taking inconsistent positions in litigation prevents petitioner from raising this question. *Markley v. Markley,* 31 Wn.2d 605, 198 P.2d 486 (1948). In *Markley* the court quoted with approval the following language taken from 19 Am. Jur. *Estoppel* §§ 50 and 72 (1939) (now found in 28 Am. Jur. 2d *Estoppel and Waiver* §§ 68-69 (1966, Supp. 1971)):

> "Generally speaking, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action. . . ."
>
> " . . .
>
> "The rule against inconsistent positions applies generally to positions assumed not only in the course of the

same action or proceeding, but also in proceedings supplemental thereto, including proceedings for review or retrial, and even in separate actions or proceedings involving the same parties and questions."

31 Wn.2d at 613-14. *See also, Svatonsky v. Svatonsky*, 63 Wn.2d 902, 389 P.2d 663 (1964); 49 C.J.S. *Judgments* § 452 (1947, Supp. 1971); 27A C.J.S. *Divorce* § 173 (3) (1959, Supp. 1971). *Cf.,* 27 Am. Jur. 2d *Equity* §§ 136-37 (1966, Supp. 1971). In *Mueller v. Garske*, 1 Wn. App. 406, 461 P.2d 886 (1969), the court distinguished the estoppel here involved from equitable estoppel which does not permit justifiable reliance upon a void decree:

A party is not permitted to maintain inconsistent positions in judicial proceedings. It is not as strictly a question of estoppel as it is a rule of procedure based on manifest justice and on a consideration of orderliness, regularity and expedition in litigation.

1 Wn. App. at 409.

In *Svatonsky v. Svatonsky, supra,* involving a proceeding subsequent to the entry of a divorce decree, the court, in the process of construing the decree, dealt with the contention that the divorce decree was void pro tanto because a divorce court exceeds its jurisdiction in awarding property to persons who were neither the parties to the action nor children of the parties; that, accordingly, that portion of the decree was void that awarded real property to one Anna Svatonsky. This disposition was, however, the subject of a pre-decree stipulation by both parties and substantial rights had been bargained for and received by both parties. The court noted that a direct appeal had not been taken from the decree "and we are not justified in looking behind the face of the judgment." 63 Wn.2d at 904. The court said:

It is clear that the plaintiff did receive valuable rights under the award of the divorce court. Joseph Svatonsky relied upon the validity of the decree and paid obligations that the plaintiff had incurred. It is well established that even though a decree is void as beyond the power of the court to pronounce, a party who procures or gives

consent to it is estopped to question its validity where he has obtained a benefit therefrom. [Citations omitted.]

63 Wn.2d at 904. The court then quoted with approval from *Bledsoe v. Seaman,* 77 Kan. 679, 95 P. 576 (1908), as follows:

". . . A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction. The question whether the court had jurisdiction, either of the subject-matter of the action or of the parties, is not important in such cases. Parties are barred from such conduct, not because the judgment obtained is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated. . . ."

63 Wn.2d at 905.

In the instant case the distributive provisions for the benefit of the children at the attained age of 25 contained express provision for alternate distribution in the event that a child died on or before reaching the attained age. The alternate distribution was part and parcel of a bargained-for, integrated decree which made provision for the receipt by the petitioner of certain benefits. Thus, certain property was awarded to him as his sole and separate property; provision was made to free him of any costs, disbursements or attorney's fees; and defendant was relieved of any further responsibility for support, maintenance and education, "subject only to modification hereafter in case of necessity as provided by law," *i.e.,* if the trust assets should prove insufficient to support, maintain and educate the children during minority. *See Millheisler v. Millheisler, supra.* Petitioner received all the bargained-for benefits and was never called upon and did not furnish any support and maintenance for the children. In fact, the petitioner was reimbursed for support and maintenance payments which he made for one of the children who for a time lived with him. He cannot take the benefits of this agreed, bargained-for, integrated decree and reject its burdens to the preju-

794

dice of those intended to be benefited thereby. In our opinion, the findings supported by the evidence justify the application of the estoppel doctrine described in *Svatonsky v. Svatonsky, supra,* supported also by the rationale of *Markley v. Markley, supra. See Mueller v. Garske, supra.* The decisions relied on by petitioner do not preclude the application of this doctrine.

The petitioner finally contends the children were not proper parties because they had no vested interest to protect and therefore the appointment of their respondent-mother as guardian ad litem for the children was error. Notwithstanding the appointment, the petitioner fully argued his position that the children had no vested interest, and the appointment of the respondent as guardian ad litem did not prejudice him in the respect here urged. *See In re Lewis,* 51 Wn.2d 193, 316 P.2d 907 (1957). The trial court rejected his contention that the children had no vested interest to protect and we have upheld the trial court. Whether other grounds exist on which petitioner could have based a claim of reversible error, based on the appointment of a guardian ad litem, we are not called upon to determine.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.