[No. 1087-1. · Division One—Panel 1.    October 16, 1972.]

MARGARET RISER, *as Guardian, Appellant,* v. ELEANOR WEITZEL RISER, *Respondent.*

*Carney, Stevenson, Siqueland, Badley & Smith* and *Basil L. Badley,* for appellant.

*Guttormsen, Scholfield & Stafford, Shannon Stafford,* and *John Cooper,* for respondent.

HOROWITZ, C.J.—This appeal involves the interpretation of a divorce decree provision requiring the divorced husband to maintain two life insurance policies with his two minor children as irrevocable beneficiaries during their mi-

nority or until their earlier emancipation. The trial court, after construing the decree, awarded plaintiff judgment for one-half of the insurance policy proceeds, namely, $4,000. Plaintiff appeals claiming to be entitled to judgment for the remaining half as well.

Howard, Jr., and Coralynn Jan are the children of Margaret and their late father, Howard Riser, Sr. When the parents were divorced, Howard, Jr., was 14 and Coralynn Jan was 9 years of age. A property settlement agreement entered into by the parents in connection with the divorce suit was incorporated in the divorce decree. The agreement and decree first required the father to make monthly support and maintenance payments of $100 for the benefit of Coralynn Jan "until said child shall attain the age of majority, become married or otherwise emancipated . . ." The agreement then provided:

> The husband shall be awarded those policies presently insuring his life and agrees to maintain the same in full force and effect with the minor children of the parties irrevocable beneficiaries thereon until such time as said children shall have attained the age of majority or become otherwise emancipated from the custody of the parties hereto. Said life insurance policies are more specifically described as follows: Prudential Insurance Company, endowment at age 65, face $2,000.00; Government Employees Group Life (term) face $6,000.00.

After his divorce, Howard Riser married defendant Eleanor Weitzel Riser. Later he changed the beneficiaries in each insurance policy from his son and daughter, share and share alike to the defendant, if living, with his children as contingent beneficiaries. Subsequently Howard Riser died. At the time of his death Howard, Jr., had reached his majority, but Coralynn Jan was 16 and not emancipated. The insurance companies paid the $8,000 of insurance proceeds to defendant in conformity with the changed beneficiary designations.

Plaintiff claims defendant must account to Coralynn Jan for the total insurance proceeds. She argues the insurance maintenance obligation required the full $8,000 to be car-

ried until both children had reached their majorities or had become otherwise emancipated. Accordingly, she contends that Howard, Jr., on attaining his majority, lost the right to benefit further from the insurance carried and that the daughter then became entitled to the full $8,000. Defendant disagrees.

The question presented is the meaning to be attributed to the above-quoted provision in the absence of extrinsic evidence. *Wood v. Wood*, 7 Wn. App. 252, 498 P.2d 913 (1972); *Callan v. Callan*, 2 Wn. App. 446, 468 P.2d 456 (1970).

Each party agrees that the father's insurance maintenance obligation as to the son automatically terminated when the latter reached his majority. *See Sutherland v. Sutherland*, 77 Wn.2d 6, 459 P.2d 397 (1969); *Herzog v. Herzog*, 23 Wn.2d 382, 161 P.2d 142 (1945); *Smith v. Smith*, 4 Wn. App. 608, 484 P.2d 409 (1971). The parties differ as to the legal effect to be attributed to the termination as it affects the resulting rights of the daughter and stepmother. The insurance provision is capable of more than one meaning. Thus, the provision may mean (1) that should the father die during the obligation period, each of his children would be entitled to receive $4,000 of insurance proceeds whether or not the son at the time of the father's death had attained his majority or had been earlier emancipated; or (2) the son by attaining his majority or earlier emancipation loses his right to further insurance protection and the beneficiary daughter then becomes entitled to receive the full $8,000 of insurance proceeds; or (3) the son's otherwise existing share of the insurance proceeds reverts to the father as owner of the insurance policies now freed of any further obligation to the son. Neither party urges position (1); plaintiff argues for position (2), and defendant argues for position (3).

In seeking to ascertain the court's intention when it incorporated the property settlement agreement in the decree, it is not unreasonable to consider the relevant background rules of law concerning the father's duty to provide for his children.

■ A father, while alive and able so to do, must support and maintain his minor children during their respective minorities or until their earlier emancipation. The duty so to do automatically terminates upon the father's death or upon the attainment of majority or earlier emancipation by the child involved, whichever event first occurs. *Sutherland v. Sutherland, supra; Dawson v. Dawson,* 71 Wn.2d 66, 426 P.2d 614, 32 A.L.R.3d 885 (1967); *Ditmar v. Ditmar,* 48 Wn.2d 373, 293 P.2d 759 (1956); *Herzog v. Herzog, supra.*

A father's duty of support and maintenance does not require the father to make a property provision for his minor child in addition to support and maintenance. *Bauer v. Bauer,* 5 Wn. App. 781, 490 P.2d 1350 (1971). *See Sutliff v. Harstad,* 5 Wn. App. 539, 488 P.2d 288 (1971).

■ Life insurance provision, over and above a father's obligation to support and maintain his minor and unemancipated children, is a property provision. A father may not be required to take out or maintain life insurance for the benefit of his children in addition to support and maintenance. *Tilly v. Canedy,* 217 Ga. 63, 121 S.E.2d 144 (1961); *Morris v. Morris,* 13 Wis. 2d 92, 108 N.W.2d 124 (1961). This rule does not mean that the support and maintenance obligation may not be secured by a life insurance policy on the life of the father, nor does this mean that in appropriate cases life insurance proceeds may not be made the source from which support and maintenance payment obligations are to be satisfied. *See Sutherland v. Sutherland, supra; Lewis v. Lewis,* 71 Nev. 301, 289 P.2d 414 (1955).

■ Nevertheless, a father may voluntarily agree to do more for his child or children than the law requires of him. Thus, he may agree to support and maintain his child or children after his otherwise existing legal duty so to do terminates, as, for example, after his death or after one or more of his children attains majority or becomes emancipated. Similarly, he may agree to make property provision for his children, including provision by way of life insurance, even though such provision goes beyond his legal duty. However, the father's intention to go beyond his legal

duty in providing for his children must be clearly and unmistakably spelled out. Thus, if the father's agreement is embodied in a property settlement agreement incorporated in a divorce decree, the intention that provision for the children shall go beyond the father's legal duty must clearly and unmistakably appear. *O'Neal v. Morris,* 7 Wn. App. 157, 498 P.2d 326 (1972); *Bauer v. Bauer, supra. See Sutliff v. Harstad, supra.*

In the instant case the life insurance provision was a provision in addition to support and maintenance. The policies were not merely security for the payment of support and maintenance, and the policy proceeds were payable without regard to any remaining balance of support and maintenance payments that, but for the death of the father, would have become payable. Accordingly, the father had the right to place limitations upon what he agreed to do, the meaning of such limitations to be construed in light of the rule that the father's intention or agreement to go beyond his legal duty must clearly and unmistakably appear. If, therefore, the insurance provision is interpreted to mean that upon the son attaining his majority or earlier emancipation the son's otherwise existing interest in the insurance policies reverts to the father as owner of the policies, the father's intention to retain his property interest in the policies best carries out that intention.

Thus far the conclusion reached with respect to the father's intention results from the application of a rule of construction. Here, however, the correctness of the conclusion is further strengthened by an additional consideration. In the absence of extrinsic evidence of unequal need by the children during their respective minorities or until their earlier emancipation, it may reasonably be assumed that the father intended to treat each child equally during the period when the child involved was an unemancipated minor. An intention to treat each child equally would mean that during their respective minorities each child would receive $4,000 of insurance protection. The intention described is consistent with the share and share alike benefi-

ciary designations originally contained in his insurance policies as above described. Were we to accept the plaintiff's contention as to meaning, however, the daughter, while still an unemancipated minor and after the son had attained his majority or earlier emancipation, would be entitled to $8,000 of life insurance proceeds upon her father's death. On the other hand, if we construe the insurance maintenance provision as providing a reversionary interest in the insurance policies to the father when his son arrives at majority or earlier emancipation, then each child receives equal benefits during the period of his or her minority or until earlier emancipation, and legal effect is given to the fact that the policies were awarded by the decree to the father subject only to the insurance maintenance obligation described.

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.