Price v. Teaford, No. S0908-04 CnC  (Norton, J., Mar. 23, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                SUPERIOR COURT
Chittenden County, ss.:                          Docket No.S0908-04 CnC

PRICE

v.

TEAFORD

ENTRY

Lucille Price, Executrix of the Estate of Gregory Price, has appealed the Order of the Grand Isle Probate Court[1] dated July 21, 2004.  That order awarded the appellee, Susan Marie Teaford, guardian of Emily Price, $50,000 as a result of the decedent's obligation under a separation agreement to maintain a life insurance policy to benefit his children.  Price argues on appeal that the Probate Court misinterpreted the terms of the separation agreement.  Both parties have moved for summary judgment.

---

[1]This case concerns a Chittenden County estate but was transferred to Grand Isle Probate Court for this claim after Judge Susan Fowler recused herself.

"[T]he superior court has 'appellate jurisdiction of matters originally within the jurisdiction of the probate court,' 12 V.S.A. § 2553, and sits as a higher court of probate, considering the case anew as if no prior proceeding had occurred in the probate court." In re J.C., 169 Vt. 139, 143 (1999) (citing Whitton v. Scott, 120 Vt. 452, 457-58 (1958)). Where the appellant does not request a jury, questions contained in the appellant's statement of questions shall be tried to the court. V.R.C.P. 72(d).

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In determining whether a genuine issue of fact exists, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15. Allegations to the contrary must be supported by specific facts sufficient to create a genuine issue of material fact. Id.

## FACTS

The following facts are undisputed. Gregory Price married Susan Teaford on November 20, 1976. Two children were born of the marriage: Andrew on September 5, 1980, and Emily on February 14, 1985. Emily has mild to moderate mental retardation and cannot live independently. Susan is her guardian.

Gregory and Susan were divorced in Virginia on October 24, 1988. A separation agreement between the parties governed the terms of the divorce and included the following paragraph 8(d) to provide that:

> The Husband shall maintain a policy of life insurance insuring him and shall name the children of the parties as beneficiary and shall keep such policy in full force and effect until his obligation herein to support the children of the parties shall cease. The amount of said insurance shall be no less than One Hundred Thousand Dollars.

This provision was added in its final form through an addendum. The addendum also modified paragraph 5 of the agreement to change the terms for child support to individually allocated payments of $250 for each child, which ceased when the child became independent or reached the age of majority.

Subsequently, Gregory married Lucille Freeman Price and moved to Vermont. In 1998 when Andrew attained majority, Gregory, under the terms of the divorce agreement, ceased to make child support payments for Andrew. At that point, Gregory also changed his life insurance policy so that at the time of his death the named co-beneficiaries were Lucille and Susan (as guardian for Emily). Gregory never sought to modify his separation agreement through a court order and had no court approval for the change in his life insurance policy. Gregory and Lucille divorced on January 21, 2003. Gregory died on February 5, 2003. Upon Gregory's death, their divorce became final. At the time of Gregory's death, Emily had not attained the age of majority.

## DISCUSSION

The question for this appeal is what, if any, effect does the 1988 divorce agreement have on the changes Gregory made to his life insurance beneficiaries. Susan, on behalf of Emily, argues that the divorce agreement required Gregory to maintain the entire life insurance policy for the sole benefit of the children, and he was not free, short of a court order, to modify it before Emily reached the age of majority. Lucille argues that the

life insurance provision must be read within the child support scheme, and that each child had separate, proportional rights to the policy, which divested with each one when they turned 18. Under Susan's proffered interpretation, the divorce agreement would nullify Gregory's change of beneficiaries and requires Lucille as executrix to turn over to Emily the other half of Gregory's policy. Under Lucille's, the divorce agreement would have no effect as the present disposition has already given Emily her 50% interest.

In examining the divorce agreement, the probate court below found that the life insurance provision was unambiguous. The court read the provision to require Gregory to maintain a policy of at least $100,000, for the sole benefit of his children until Gregory's obligation to support any of the children ceased. The court noted that Gregory made no attempt to seek an order from family court allowing him to modify his life insurance. Forte v. Forte, 143 Vt. 518, 521 (1983) (parties cannot unilaterally modify support orders). Thus, it concluded that Gregory's modification of beneficiaries was a violation of the agreement, and Emily was entitled to the full $100,000 in life insurance benefits in accordance with the separation agreement. It ordered Lucille to return her half of the policy to Emily.

On appeal, Lucille does not entirely dispute the probate court's interpretation. She admits that, when read alone, the language of the life insurance provision does not divide the right to receive benefits between the children and does not explicitly allow for modification of the policy before both children are 18. Instead, Lucille urges the court to interpret the life insurance provision as part of a larger child support arrangement. This argument has some support from Vermont contract law and other jurisdictions that have faced similar factual situations.

The central problem to this case is how to interpret paragraph 8(d) of the divorce agreement. Both sides offer differing interpretation. As parties to a divorce Gregory and Susan were permitted to negotiate for themselves the terms of their marriage dissolution. Duke v. Duke, 140 Vt. 543, 546 (1982). Their agreement will be honored under the ordinary rules of contract, and where the language is clear, the parties are bound by the common meaning of the words used in their agreement. Id. Looking at the circumstances of the agreement and the agreement as a whole are critical to understanding the intent and function of the individual provisions. Rogers v. Wells, 174 Vt. 492, 494 (2002); Isbrandtsen v. North Branch Corp., 150 Vt. 575, 579 (1988).

The facts are that under paragraph 8(d) Gregory agreed to carry $100,000 in life insurance for the benefit of his children. This obligation ceased when they reached the age of majority and was payable to them directly—rather than their mother or some other trustee. The nature of the provision was such that if Gregory had died one month later, neither child would have been eligible for the benefit. Given this transitory and limited nature, the parties did not intend to make this benefit a property settlement but rather intended it as a means to protect the children's support in the event that Gregory should die before his support obligations to them ended. See, e.g., Metropolitan Life Ins. Co. v. Woodham, 1995 WL 429259, at *7 (E.D. Mich 1995) (discussing In re Monreal Estate, 375 N.W.2d 329 (Mich. 1985)); Estate of Comiskey v. Cominskey, 465 N.E.2d 653, 657 (Ill. App. 1984); Beberfall v. Beberfall, 195 N.W.2d 625, 627 (Wis. 1972); see also Knowles v. Thompson, 166 Vt. 414, 418–21 (1997).

Hence, the provision at issue is not a separate property right but rather a function of the parties' child support arrangement. The right that Emily seeks to enforce in this present action is an equitable one that is dependent on the child support arrangement and the purpose of the life insurance provision. In re Schwass, 467 N.E.2d 957, 960 (Ill. App. 1984).

The child support arrangement was evenly divided between the two children.  When Andrew reached 18, Gregory ended his payments but continued Emily's.  The purpose of the life insurance provision was to protect Emily and Andrew's child support payments.  The fact that Andrew turned 18 terminated his right to child support and any need to protect them.  Therefore, any right he might have had to the life insurance money ended.

Contrary to the probate court's conclusion, Emily did not absorb this right to Andrew's share.  While the provision does not say what should be done with Andrew's rights, it is presumed to have reverted back to Gregory as it is ultimately his property.  See J. Michalik, Annot. Divorce: Provision in Decree That One Party Obtain or Maintain Life Insurance for Benefit of Other Party or Child, 59 A.L.R.3d 9, at § 14[d] (1974, 2002 Supp.).  As a result, Gregory was free to name another beneficiary without consulting the court as control over that half of the policy was his.

As to Susan's remaining arguments, her analogy to child support has some appeal but lacks any legal foundation.  She relies in part on Jones v. Harrison, a Virginia case that created a constructive trust for children when their father failed to continue a life insurance policy in conformance with the divorce agreement.  458 S.E.2d 766 (Va. 1995).  That case is distinguishable from the present situation because it involved a life insurance provision without a termination date.  Id. at 769.  The Virginia court interpreted this obligation to extend indefinitely and the issue revolved around the nature of the children's interest in the father's estate based on their permanent right to claim his life insurance.  Id. at 770.  In contrast, Gregory's obligation had a termination date and this date changed the nature of his obligation from a permanent one, akin to a property settlement, to a temporary one that vested rights in his children to the extent that the provision intended.  In other words, the requirement that Gregory maintain a life insurance policy for the benefit of children was not itself a

separate property but rather one that secured his child support payments in the event of death.

Finally, the court in <u>Riser</u> noted that a different result may be warranted where extrinsic evidence demonstrates an intention to treat the children differently due to the children's unequal needs during their respective minorities.  <u>Riser v. Riser</u>, 501 P.2d 1069, 1072 (Wash. App. 1972).  Here, Susan argues that Emily's mild to moderate mental retardation is sufficient reason to not assume that the life insurance proceeds should be divided equally or allow Gregory to take unilateral action in changing the beneficiaries.  While Andrew and Emily were both minors, however, the proceeds would have been split half and half as they children were co-beneficiaries.  Furthermore, the children were allocated equal amounts of child support while they were both minors.  There is no evidence that the divorce agreement made any distinction between the two or intended to allocate a greater amount to Emily because of her greater needs.  Emily may well have greater financial needs as an adult, but the life insurance provision was not the vehicle that the parties intended to provide for that.

## ORDER

Accordingly, summary judgment is granted in favor of Lucille Price, Executrix of the Estate of Gregory Price.  The probate court ruling is reversed.  The claim of Susan Teaford, guardian of Emily Price, in the amount of $50,000 is denied.

Dated at Burlington, Vermont this _____ day of March, 2005.

_____
Presiding Judge